# Harden *v.* Darwin & Pulley.

*Bill in Equity for Foreclosure of Mortgages ; Cross-Bill for Cancellation.*

1. *Contracts between husband and wife, at common law.*—At common law, all contracts between husband and wife were prohibited, and a conveyance of property by the wife to the husband directly was void; but a married woman was not incapacitated to act as trustee, express or implied, and she might, in the exercise of a power as trustee, make a conveyance to her husband, which a court of equity would sustain as if made to a third person.

2. *Same, under statutory provisions.*—The capacity of the wife to make contracts is not enlarged by the statutory provisions creating and regulating the estates of married women, and contracts between her and her husband for the sale of property are prohibited (Code, § 2709) ; yet she

VOL. LXXVII.

[Harden v. Darwin & Pulley.]

may, as at common law, execute a power as trustee in his favor, or be declared a trustee *in invitum* at his instance.

3. *Estoppel against married woman.*—The deed of a married woman, conveying property belonging to her statutory estate, if executed in any other manner than that prescribed by law, or founded on a considera- tion not sanctioned by law, does not estop her from asserting its invalidity, and asking its cancellation; and though she might be estopped from de- nying the validity of an act done under a power, and within the scope of her authority as trustee, the precedent inquiry would remain, whether she performed the act in the capacity of trustee.

4. *Purchase of lands with joint moneys of husband and wife ; resulting trust, and voluntary partition.*—When lands are purchased and paid for, partly with the moneys of the husband, and partly with moneys belong- ing to the statutory estate of the wife, the title being taken in her name, a resulting trust may be established in favor of the husband, to the ex- tent of his moneys so invested, by proof repelling the presumption of an advancement or provision for the wife ; and if the parties voluntarily exe- cute a deed of partition, reciting the facts, a court of equity will sustain and enforce it against the wife or her heirs, " so far as the partition clearly appears to be fair and just ;" but, if two separate tracts of land are so bought, at different times, and by distinct contracts, and by the deed of partition one tract is assigned to each, thereby effecting a partial ex- change, a court of equity will not enforce it against the wife or her heirs, though it might be sustained " when shown to be equitable and for the benefit of the wife."

5. *Same ; recitals of deed.*—The recitals of the deed of partition in such case, if made deliberately and freely, are entitled to great weight, but are not conclusive ; and when it is shown as here, that they are un- true in fact, that the partition was not equitable, fair and just, and that it was procured by undue influence and other improper means while the wife was an invalid, a court of equity will cancel and set it aside, at the instance of her heirs, although it is not shown that the entire purchase- money was paid by the wife.

6. *Same ; when mortgagee is not entitled to protection as purchaser with- out notice.*—If, in such case, the lands assigned to the husband, by the deed of partition, are afterwards mortgaged by him and his wife, as se- curity for his debt, the mortgagee can not claim protection as a *bona fide* purchaser without notice, on account of the recitals of the deed of parti- tion, but is charged with notice of all the facts shown by the records of the Probate Court, relative to the purchase by the wife at an administra- tor's sale, which is mentioned in the deed.

APPEAL from the Chancery Court of Madison.

Heard before the Hon. N. S. GRAHAM.

The original bill in this case was filed on the 5th December, 1879, by Darwin & Pulley, merchants and partners in trade, and sought, principally, the foreclosure of a mortgage on a tract of land, executed to the complainants by Benjamin L. Harden and his wife, Mrs. Anne E. Harden, both since de- ceased ; also, the foreclosure of a prior mortgage on the same tract of land, executed by said Harden and wife to Mrs. Mary B. Miller, an account of the mortgage debts, a sale of the land for the satisfaction of both debts, and general relief. The per- sonal representative and the children of said Benjamin L. Har- den, with Mrs. Miller, were made defendants ; the children, who were infants, being also devisees under the will of their

[Harden v. Darwin & Pulley.]

mother. The complainants' mortgage was dated the 8th March, 1876, and was given to secure the payment of said Harden's promissory note for $1,500, which was of even date with the mortgage, and payable on the 1st December, 1876. The mortgage to Mrs. Miller was dated the 24th September, 1873, and recited an indebtedness of $1,704.55, as evidenced by said Harden's promissory note, of even date therewith, and payable on the 1st November, 1874.

The tract of land conveyed by these mortgages, called the ".Nance land," was then occupied by said Harden and his wife, and was acquired by purchase at a sale made on the 23d October, 1867, under an order of the Probate Court, by the administrator of the estate of Giles Nance, deceased ; the purchase being made in the name of Mrs. Harden, and conveyance being executed to her, under the order of the court, on the 29th January, 1870, when the payment of the purchase-money was completed. The land was claimed by said Benjamin L. Harden as his own, under a deed of partition executed by and between him and his wife, dated December 7th, 1872, and attested by two witnesses, which was in the following words : " *Whereas*, Benjamin L. Harden, of said county, at a sale made by Benjamin R. Nance, as administrator with the will annexed of Giles Nance, in the name of his wife, Anne E. Harden, purchased the following described parcels of land," describing the lands, " at and for the sum of $2,820 ; *and whereas* the said Benjamin Harden, having fully paid the purchase-money, on the 29th day of January, 1870, received of said Nance, as such administrator, a deed conveying the said lands to the said Anne E. Harden, which deed is of record," &c. ; " *and whereas*, on the 11th day of January, 1869, the said Benjamin Harden purchased of one N. P. Wilburn the following described land," describing it, " and having fully paid the purchase-money thereof, the sum of $1,600, received from said N. P. Wilburn and wife a deed conveying the said lands [to] the said Anne E. Harden ; *and whereas*, on the purchase of said lands first above described, the said Benjamin L. Harden used $1,000, the separate estate of his wife, paying the remainder of the purchase-money from his own individual moneys ; *and whereas*, on the purchase of said land above described from said N. P. Wilburn, the said Benjamin L. Harden used the sum of $600, the separate estate of his said wife, paying the remainder of the purchase-money from his own individual moneys ; *and whereas* the two sums so used by Benjamin L. Harden, $1,000 and $600, constitute the entire separate estate of said Anne E. Harden ; *and whereas* the said deeds were made to her solely for the purpose of securing to her the said moneys belonging to her, so used in the purchase of said lands, and not to invest her with

[Harden v. Darwin & Pulley.]

an absolute title thereto ; *and whereas* the said Benjamin L. and Anne E. are anxious to avoid the expense and delay of a suit in chancery to divest said Anne E. of any other right, title, claim or interest in said lands, than such as might be necessary to secure to her the payment of the said sum of $1,600 ; *and whereas* the said lands conveyed to the said Anne E. by the said N. P. Wilburn are of the value of $1,600, and the said Anne E. is desirous of holding and retaining the said lands so purchased of said N. P. Wilburn, free and exempt from all claim thereon which her husband, the said Benjamin Harden, could or might prefer, by reason of the facts hereinbefore recited, and by reason of any claim he could have thereon as her husband ; *and whereas* the said Benjamin L. is willing to release the said Anne E. of all claim which she could have on said lands, by reason of his payment of part of the purchase-money thereof, and all right or claim he could have thereon or thereto as her husband, on her releasing, surrendering, and conveying to him all the right, title, claim and interest in the lands first above described, conveyed to her by the said Benjamin R. Nance : *Now this indenture witnesseth,* that the said Anne E. Harden, for and in consideration of the premises, has released, relinquished, surrendered and conveyed, and by these presents doth release," &c., "unto the said Benjamin L. Harden, the said lands above described as conveyed to her by the said Benjamin R. Nance, together with the right *to have* (?) by reason of the conveyance aforesaid of the said Benjamin R. Nance ; and the said Benjamin L. Harden, for and in consideration of the premises, and the release of the said Anne E., hath released, surrendered and conveyed, and by these presents doth surrender and convey, unto the said Anne E., her heirs and assigns forever, all the right, title, claim and interest, which he could or ought to have, in and to the lands above described as purchased of the said N. P. Wilburn, and conveyed by him to the said Anne E., by reason of the payment by him (said Benjamin L.) of $1,000 of the purchase-money thereof ; and the said Benjamin L. doth here now renounce, surrender, relinquish and release, unto the said Anne E., all right, title and claim to the possession of said lands, and all right, title and claim which he might or could have in said lands as the husband of the said Anne E., whether as tenant by the curtesy or otherwise ; and the said Benjamin L. doth further covenant and agree, to and with the said Anne E., that she shall have and hold the said lands last above described to her sole and separate use, free and exempt from all claim therein or thereto which he now has, or can have, or might or could hereafter have, as husband of the said Anne A. *In witness whereof,*" &c.

A copy of this deed, and also copies of the mortgages, were

[Harden v. Darwin & Pulley.]

made exhibits to the bill. Letters of administration on the estate of said Benjamin L. Harden were granted on the 17th September, 1879. Mrs. Harden also died before the bill was filed, and her last will and testament was admitted to probate on the 16th February, 1878. The will was executed on the 22d September, 1876, and contained these provisions: "I give and bequeath to my two children, Luty Walker and Henry Turner Harden, the tract of land purchased of N. P. Wilburn and wife," particularly describing it; "also, my entire interest in any other real estate I now possess, or may hereafter belong to my estate. The land purchased of N. P. Wilburn was paid for with my individual money. I also give to my two children, above named, my entire personal estate of all kinds. I desire that my dear husband, Benj. L. Harden, shall manage and control the property for my dear children, without giving bond, and direct that none of my estate shall be held in payment of his debts. In witness whereof," &c.

An answer to the bill was filed by the guardian *ad litem* of the infant defendants, denying the validity of the mortgages, and of the deed of partition, and alleging that the said "Nance land" in fact belonged to Mrs. Harden as her statutory estate; that it was bought in her name, paid for with her money, and the title conveyed to her under the order of the court; that the deed of partition was a contrivance intended to put the title to the land in said Benj. L. Harden, so that he might mortgage it for his debts, and to enable him to borrow money; and that Mrs. Harden was induced to join in its execution by the persuasion, influence, and threats of her husband. A demurrer was incorporated in the answer, assigning several specific grounds; which demurrer was overruled by the chancellor, and his decree was affirmed by this court on appeal.—See the case reported in 66 Ala. 55–64, where the several causes of demurrer are stated.

Afterwards, on the 5th July, 1881, the answer of the guardian *ad litem* was amended, by adding the following allegations: "From the year 1871 to the year 1876, when said Anne Harden died, she was an invalid, confined to her room and bed, and, during all of said time, was completely dominated and controlled by her said husband in all business matters; and respondent alleges, on information and belief, that she did not sign the deed to her husband, the mortgage to complainants, nor the said mortgage to Mary B. Miller, of her own free will and voluntarily, but that she was forced, coerced, or compelled by her said husband to sign them; that the recitals of said deed to her husband, of date December 7th, 1872, are untrue; that said deed and mortgage are a cloud upon the title of said infants to said real estate, and that said Anne Harden was forced to

sign said papers without legal advice, and without opportunity for legal advice." It was therefore prayed that the answer be taken as a cross-bill, and that the deed and mortgages be cancelled and annulled. An answer to the cross-bill was filed by Darwin & Pulley, in which they denied all its averments assailing the validity of the deed and mortgage, and re-affirmed the facts alleged in the original bill ; and they further claimed to be *bona fide* purchasers for valuable consideration, without notice of any defect in the title of said Benj. L Harden.

The cause being submitted for decree on pleadings and proof, the chancellor dismissed the cross-bill, and rendered a decree for the complainants, foreclosing the mortgages as prayed. From this decree an appeal is sued out by the guardian *ad litem* of the infant defendants, and each part of it is assigned as error; and the administrator of the estate of Benj. L. Harden makes the same assignments of error.

D. D. SHELBY, for the appellants.—It was decided in this case, on the former appeal, that the deed between Mrs. Harden and her husband "should be sustained, so far as the partition clearly appears to be fair and just;" but it was further said, that the transaction, like all others between husband and wife, "will be scanned with a watchful and jealous eye"—that the facts alleged, as to payment of the purchase-money, "are required to be shown by clear and satisfactory evidence ;" and that the *prima facie* presumption, arising from a payment of part of the purchase-money by the husband, would be, that he intended to make an advancement or provision for the wife.—66 Ala. 62. This is the scope and extent of the decision, and an application of these principles to the facts disclosed by the record will show error in the chancellor's decree. The title to the land, in each case, was taken in the name of the wife ; and this raises a presumption, almost conclusive, that it was intended she should take the absolute estate, and not hold merely as trustee.— *Wimbish v. Loan Asso.*, 69 Ala. 579 ; Wells on Property of Married Women, § 226. The conveyance, in each case, being to the wife, the presumption arises, that her money was used in the purchase.—2 Bishop, M. W. 139–40; *Saunders v. Garrett*, 33 Ala. 454; *Stall v. Fulton*, 1 Vroom, N. J. 430-38; *Morrison v. Koch*, 32 Wisc. 254; *Bodget v. Ebbing*, 24 Miss. 245. Aside from the legal presumptions, it is affirmatively proved that the entire purchase-money of the "Wilburn land" ($1600) was paid with her funds—with money due her from her brothers, and paid by them on the day the purchase was made; and as to this there can be no controversy. As to the "Nance land," in addition to the conveyance taken in her name, the records of the Probate Court show that she was reported as the purchaser,

and that the conveyance was ordered to be made to her; the greater part of the purchase-money was paid with her funds; and as to the $1,000 paid by her husband, his declarations at the time, as well as subsequent thereto, show that the purchase was made for her. It was not necessary, in support of the wife's title, to trace her funds into every part of the purchase-money; and the equity created in her by the husband's payment, under the circumstances, was irrevocable by him.—59 Ala. 580; 2 Bish. M. W. 140.

Against these legal presumptions, and this affirmative proof, the complainants rely on the recitals of the deed of partition, as conclusive. But, at common law, the deed of a married woman, conveying real property to her husband, is absolutely void.— *White v. Wager*, 25 N. Y. 328 ; *Kennemore v. Pyle*, 44 Ind. 275 ; *Preston v. Fryer*, 38 Md. 221. By statute, contracts between husband and wife are prohibited, and restraints are imposed upon the alienation of her statutory estate; and she has never been held estopped by her deed from showing that these statutory provisions were violated, and thereby recovering her property.— *Weil v. Pope*, 53 Ala. 585; *Hammond v. Thompson*, 56 Ala. 590; *Boyleston v. Farrior*, 64 Ala. 564; *O'Connor v. Chamberlain*, 59 Ala. 431; *Chapman v. Abrams*, 61 Ala. 108; *Blythe v. Dargin*, 68 Ala. 370. The doctrine of estoppel can never be invoked against a married woman, when she acts in an individual capacity.— *Gliddon v. Strupler*, 52 Penn. 400. Nor will an agreement to convey be enforced against her, "even when she acts as a trustee in making the contract."—Pomeroy on Contracts, § 459, citing *Avery v. Griffin* (L. R. 6 Eq. 606), and *Nicholl v. Jones* (L. R. 3 Eq. 696); also, Hill on Trustees, ed. 1865, mar. 50. If the doctrine of estoppel could be invoked in such cases, an easy method is discovered for evading all the statutory restraints imposed upon the alienation of the wife's separate property.

The recitals of the deed of partition, then, being shown to be untrue in point of fact; the deed having been procured by undue influence, importunity, and the improper exercise of marital authority, which a court of equity will not sanction; and the partition being in itself unfair and inequitable, it will not be enforced against the infant children of the wife, under the principles established by the former decision. The children claiming, not a mere equity, but the legal title, the defense of *bona fide* purchase without notice can not be set up against them.—2 L. C. Eq. 64. Nor are the complainants entitled to protection as purchasers without notice, "against an equitable title of which they had no notice," because the mortgages are not supported by a present consideration.—*Thames v. Rembert*,

63 Ala. 561; *Wells v. Morrow,* 38 Ala. 125; *Boyd v. Beck,* 29 Ala. 703.

CABANISS & WARD, *contra.*—The equity of the bill was settled on the former appeal, and its material allegations are established by the evidence set out in the present record, without the aid of the presumption which this court indulges in favor of the chancellor's conclusion on a disputed question of fact. *Rather v. Young,* 56 Ala. 94. It is shown that Mrs. Harden's interest in her father's estate was only about $1,600, which her brothers bought from her, February 1st, 1866, giving their note for $1,613; and $1,600 of this sum, nearly the whole amount, is traced into the purchase of the "Wilburn land," which was assigned to her under the deed of partition. No complaint was made of the partition while the parties to deed were living; and their conduct, subsequent to its execution, was consistent with its recitals. The cross-bill, seeking to set aside and cancel it, was not filed until after the legal questions presented by the demurrer were decided against the defendants. The appellants rely, mainly, on the testimony of Mrs. Harden's brothers, who fail to distinguish between personal knowledge and hearsay; and their testimony not only contradicts each other, but is contradicted by undisputed facts. Would Harden insist upon an unfair settlement, as they say, in the presence of his wife's brothers, and to them? Does it not indicate that he considered his demand just and fair? According to their testimony, they knew that Mrs. Harden was being unduly importuned and coerced into placing her property in condition to be mortgaged by her husband; and yet they neither protected her, nor gave information which would have prevented the deed from misleading innocent persons, who might deal with Harden on the faith of it as recorded. The provisions of Mrs. Harden's will corroborate the recitals of the deed, and accord with her conduct and admissions; and the conclusion is more reasonable, that her husband suggested it to prevent his life-estate in the "Wilburn land" from being subjected to the payment of his debts, than that it was executed in fear and distrust of him.

The recorded deed of partition was *prima facie* valid. 66 Ala. 62. Being valid on its face, and showing a contract fully executed, third persons might rely on its recitals with confidence.—*Gridley v. Wynant,* 23 How. 500; *Moog v. Strang,* 69 Ala. 98. If the recitals were not true, how or from whom could the complainants have ascertained the facts by inquiry? They were dealing with the only parties in interest, whose conduct was in accordance with the recitals of the deed; and any assurances made to them by Mrs. Harden would have been open

to the same objections now urged against the deed and mort-
gage. That the extension of their debt was a valuable con-
sideration for their mortgage, entitling them to protection, see
*Mobile Life Insurance Co. v. Randall*, 71 Ala. 220.

CLOPTON, J.—It is conceded, that the common law does
not incapacitate a married woman from being a trustee, either
express or *in invitum* ; nor is she disqualified to exercise judg-
ment and discretion in discharge of the office, and in execution
of any power devolved on her as such trustee, without the co-
operation of her husband. While acting under a power, and
within the scope of her authority, she may make a conveyance
to her husband, as well as to a third person, which will be sus-
tained in a court of equity.— *Gridley v. Wynant*, 23 How. 500 ;
2 Cord on Mar. Women, § 1396. On a former appeal, which
was taken from a decree overruling a demurrer to the bill (66
Ala. 62), it was held, that where the purchase-money of land
was paid with a mixed fund, partly the property of the hus-
band, and partly the property of the wife, and the title taken in
the name of the wife, a resulting trust may, in such case, be
established in favor of the husband, for the part paid by him.
It was further held, that on the allegations of the bill, which
were admitted to be true by the demurrer, the mutual deeds,
executed by the husband and wife, were designed to separate
the relative interests of the parties ; that Mrs. Harden must be
regarded as conveying in her capacity as trustee, and that the
deeds " should be sustained, so far as the partition clearly ap-
pears to be fair and just." It was also said : " In view of the
relation of the parties, and the influence which the husband ex-
erts thereby over the conduct of the wife, all transactions of
this, and in fact of every character between them, will be
scanned with a watchful and jealous eye by courts of equity."

The case now comes before us on appeal from the decree on
the pleadings and proof ; and the investigation must be ad-
dressed to a consideration of the deed of partition, and its re-
citals, in connection with, and in the light of the circumstances
attending the purchases of the lands and the payment of the
purchase-money, in order to ascertain whether the partition
appears to be fair and just, when subjected to a close and vigi-
lant scrutiny ; in other words, whether Mrs. Harden has vol-
untarily done what she would have been compelled involunta-
rily to do. The deed of partition can not be sustained, unless,
on the facts proved, it satisfactorily appears that she executed
it in her capacity of trustee, either because of a resulting trust
in his favor, or because, as alleged in the bill, and recited in
the deed, she took and held the legal title for the purpose of

[Harden v. Darwin & Pulley.]

securing to her the money belonging to her separate estate, which was invested in the lands.

If, by the legal effect and operation of the transactions, the lands, or a material, valuable, and tangible interest in each parcel, vested in Mrs. Harden ; in such case, the common-law rule applies, which prohibits all contracts between husband and wife, and avoids any conveyance of her property to him directly. The rule rests on the unity of person, and on the presumption that the wife is under the control or coercion of the husband, and thereby deprived of freedom of action. While a court of equity will uphold, for the benefit of a married woman, many acts invalid at law, her acts, void at law for her protection, will not be sustained in equity, against her interests. *Rumfelt v. Clemens,* 46 Penn. St. 455 ; *White v. Wager,* 25 N. Y. 328 ; *Preston v. Fryer,* 38 Md. 221. Neither is her capacity, in this respect, enlarged by our statutes, which, in express terms, prohibit any contract between husband and wife for the sale of any property, and prescribe a particular mode for the sale and conveyance of her statutory separate estate—by an instrument in writing executed by both husband and wife, and attested by two witnesses, or properly acknowledged. The husband can not join in a conveyance to himself.—*Kinnamore v. Pyle,* 44 Ind. 275.

No question of estoppel is raised by the argument of counsel for appellees, and properly not. The case is clear of such complication. It has been uniformly held, that a married woman is not estopped from asserting the invalidity of a conveyance of her property, not executed in the mode required by the statute, though she has received a valuable consideration, and her vendee has been let into possession ; and that a court of equity will not enforce it against her, as an agreement to convey ; and also that the court will intervene, in the absence of fraud, duress, or imprisonment, to annul and cancel a conveyance of her statutory separate estate, by mortgage or absolute deed, in consideration of the debt of her husband.—*Blythe v. Dargin,* 68 Ala. 370 ; *Boyleston v. Farrior,* 64 Ala. 564. It may be, that she would be estopped from denying the validity of an act done under a power, and within the scope of her authority as trustee ; but the precedent inquiry remains, did she perform the act in the capacity of trustee ?

The purchases of the two parcels of lands were separate, distinct, and independent transactions; the "Nance land" having been purchased in December, 1867, for $2,820.00, one-third cash, and the balance in one and two years ; and the "Wilburn land" having been purchased in January, 1869, for $1,600.00, paid at the time. For the deferred payments on the Nance lands, Mrs. Harden executed her bonds, with her husband and

31

brother as sureties. There was no connection, directly or indirectly, between the purchases. A married woman has capacity, with the consent of her husband, to acquire lands by purchase ; and her husband, as her trustee, may, with her concurrence, invest money, the *corpus* of her statutory separate estate, in the purchase of lands. Lands acquired by either mode are, by operation of law, the statutory separate estate of the wife. *Marks v. Cowles*, 53 Ala. 499 ; *Rainey v. Rainey*, 35 Ala. 282 ; *Sharp v. Sharp*, 76 Ala. 312. The deeds to the lands were made to, and in the name of Mrs. Harden. By the purchases, and the execution of the conveyances, the lands were, *prima facie*, her separate estate, and were absolutely so to the extent moneys of her separate estate were invested in the purchases. The rights and capacities of the parties are not governed by precisely the same principles, as if there had been a single purchase, or contemporaneous purchases of all the lands, the consideration-money contributed partly by each. If it be conceded that a part of the purchase-money of each parcel of land was paid by the husband, and there is a resulting trust in his favor ; the trust is not single and common to both parcels, but separate trusts, charged severally on each parcel, for the amount of his money invested in the purchase of the particular parcel. If such were the facts, the deed of partition is not only an attempted execution of the trusts, but also an exchange of lands, and void to the extent it was an exchange ; though equity may sustain such transaction, when shown to be equitable and for the benefit of the wife.

The consideration received by Mrs. Harden, for her release, surrender, and conveyance of the " Nance lands" to her husband, was, as recited in the deed between them, his release, surrender, and conveyance to her of all his right, title, claim, and interest in the " Wilburn land," by reason of his having paid one thousand dollars of the purchase-money. The evidence of the witnesses, Wilburn, D. H. Turner, H. P. Turner, and Humphrey, irresistibly forces the conclusion, that the entire purchase-money of the " Wilburn land" was paid with the proceeds of a note due to Mrs. Harden by her brothers, which was her statutory separate estate. The claim of her husband, that he paid a part of the purchase-money, is not colorable—is a mere pretence to give the appearance of equality in the partition. He had no claim or interest in the " Wilburn land," other than as husband and trustee. There was no resulting trust in his favor, and the fairness and justness of the partition is thus shown to be baseless.

The only opposing evidence is the recitals of the deed. These recitals, however conclusive they may be between parties *sui juris*, are not conclusive on Mrs. Harden, or her heirs, be-

[Harden v. Darwin & Pulley.]

cause of her legal incapacity, and the presumed subordination of her will to that of her husband.—*Glidden v. Strupler*, 52 Penn. St. 400; *Drake v. Glover*, 30 Ala. 382.    They are recitals of the considerations moving the parties, not contractual, and may be considered in the nature of admissions sufficient to make a *prima facie* case.    If solemnly, deliberately, and freely made, they are entitled to great weight; but, if their force is impaired by reason of the manner in which they were procured, they should be accorded corresponding consideration. The evidence shows that Mrs. Harden was an invalid for several years preceding her death, and during a large portion of the time was confined to her bed; that he was persistent in his efforts to get her to convey to him the "Nance land," threatening at times to take their son, and leave her in her afflicted condition, if she did not arrange it so he could raise money; and practiced other annoyances.    His mother, who lived in the house with them, and whose natural instinct is to cover the misdeeds of her son as far as consistent with truth, testifies that she supposed Mr. Harden persuaded his wife to sign the deed—does not think she signed it willingly, and, while he did not deal harshly with her, he may have worried her into doing so.

As appropriate we quote the remarks of Agnew, J., in *Rumfelt v. Clemens, supra:* "What assurance have we, in this, or in any case, that the agreement was not procured from her by threats, cruel treatment, or a course of petty annoyances amounting to an absolute constraint?    The policy of the law, in this respect, is founded in a deep insight of the marriage relation, exposing the timid, shrinking wife to the storm of passion, the torturing reproach, or the heart-breaking unkindness of the husband."    This was said in the absence of evidence.    Here, there is evidence showing, perhaps not the "storm of passion," or the "torturing reproach," but "a course of petty annoyances amounting to an absolute constraint," and the unkindness of the husband to an afflicted wife, whose power of resistance was, probably, nearly exhausted by the wasting of disease.    Admissions, obtained under such circumstances, can not overcome the clear, explicit, and positive statements of several unimpeached witnesses.

In respect to the payment of the purchase-money of the "Nance land," the evidence is not so clear, explicit, and satisfactory.    It tends to show, affirmatively, that Mrs. Harden paid a large portion,—more than the sum recited in the deed of partition; but we are without reliable or specific information by whom, or how the balance was paid.    It is not shown that the separate estate of Mrs. Harden was sufficient to make the entire payment, without the use of the railroad stock, and

[Harden v. Darwin & Pulley.]

there is no evidence that this was ever sold, or so appropriated. The evidence tends strongly to show that Mr. Harden was without means to make the payments. In such case, and under such circumstances, the wise and salutary presumptions of law, sanctioned by the experience of ages, must prevail. In 2 Bishop on Mar. Women, § 140, the author very properly observes: "As no man, in the complication of business affairs, could prove affirmatively what was the consideration which entered into the acquisition of every piece of property, and show it to be disconnected from every thing proceeding from his wife; so, in like manner, can no married woman, holding property, and managing it on her own account, trace affirmatively her separate ownership in the consideration paid for every thing she may justly claim as her own; and it would seem that, in substance, the same rules of evidence which protect the husband should be made available for the wife."

The purchase of the lands was in the name of the wife; she was reported by the administrator as the purchaser; the sale was confirmed as made to her; the receipt for the purchase-money was given as paid by her; on the payment of the purchase-money, the order of the court was made for a conveyance to her, and a conveyance was accordingly so made. These facts, in the absence of opposing evidence, are sufficient to show that the purchase was made, and the purchase-money paid by the wife.—*Saunders v. Garrett*, 33 Ala. 454; *Bodgett v. Ebbing*, 24 Miss. 245; *Morrison v. Koch*, 32 Wis. 254. These proceedings were in progress from December, 1867, the time of the sale, to January, 1870, when the conveyance was executed; and during this period, there is no claim or pretense by the husband that he had paid any portion of the purchase-money, or had any interest in the land; but, on the contrary, we have his admissions to the administrator, that the payments were made with moneys of Mrs. Harden's. No evidence was offered by the complainants that the husband paid any part of the purchase-money, other than the admissions of the deed of partition, the force of which we have considered. We attach no importance to the will. The "Wilburn land" is devised to her children, and also her *entire interest in any other real estate she then possessed*, or might thereafter belong to her estate. There was no other real estate, except the "Nance land," in which she could at that time claim an interest; and if the will proves anything, it tends to prove that she then claimed, or thought she had an interest therein.

The mortgagees can not claim the protection awarded to innocent purchasers. They knew that Mrs. Harden was a married woman. The records of the Probate Court and of the conveyances, and the deed of partition—links in their chain of

title—which it was their duty to examine, were sufficient to put them on inquiry; and the pursuit of the inquiry with reasonable diligence would have brought to them knowledge of facts, showing the fallacy of the recitals in the deed of partition, the unfairness and injustice of the deed of partition, and the incapacity of Mrs. Harden to execute the deed to her husband.

The bill is filed for the single purpose of foreclosing the mortgages on "the Nance land." There are no allegations of fraud in the purchase, or in the conveyance to Mrs. Harden. The title of complainants to relief is based on the validity of the deed to her husband. If it be conceded that the evidence is insufficient to show that all of the purchase-money was paid with moneys, the separate property of Mrs. Harden, and that a part was paid by the husband with his individual funds, the presumption is that it was an advancement; and an equity in the land was, by the purchase, vested in the wife, which, in the absence of fraud, became perfect on the payment of the purchase-money, and was, by the execution of the conveyance, converted into a legal estate. The legal estate "was irrevocable and indestructible, by any act of the husband subsequent to its creation." Had the husband by any means become vested with the legal estate, he would have been a trustee for the wife.— *Wimbish v. B. & L. Asso.*, 69 Ala. 580.

The decree is reversed, and a decree will be here rendered denying the complainants relief, and setting aside and cancelling the deed of partition executed by Benjamin L. Harden and Anne T. Harden, December 7, 1872. The appellees will pay the costs of appeal in this court and the Chancery Court, and the costs of suit in the Chancery Court.