N. R. ZIMMERMAN AND WIFE v. C. H. ROBINSON.

*Riparian Rights—Married Woman—Estoppel by Deed.*

1. Riparian rights being incident to land abutting on navigable water cannot be conveyed without a conveyance of such land, and lands covered by navigable water are subject to entry only by the owner of the land abutting thereon.

2. Since a *feme covert* may, with the consent of her husband, convey her land "as if she were single," a conveyance by her estops her from afterward acquiring by grant from the State riparian rights incident to the land conveyed, and even if she subsequently entered under another title lapping upon the boundaries of her own conveyance it was necessary in order to effect a disseizin that she should occupy the interference and to mature title that the occupation should continue seven years.

3. Any deed made to her subsequently would feed the estoppel, and she could only have availed herself of it by actual occupation of the land previously conveyed.

CIVIL ACTION for the recovery of land, tried before *Graves,* J., and a jury, at Fall Term, 1893, of PASQUOTANK Superior Court.

ZIMMERMAN *v.* ROBINSON.

The plaintiffs and defendant claimed from a common source, William Messenger, who owned in 1856 lots No. 7 and 8, and that part east thereof bounded on the north by Fearing street, east by Pasquotank river, south by Pasquotank river and Tiber creek, and west by line represented on plat as "T" "A" "B."   The plat introduced was as follows:

Plaintiffs introduced deed from William Messenger to Benjamin Spruill conveying said described property November 30, 1856, and mesne conveyances to *feme* plaintiff, C. E. Zimmerman, for same.

The plaintiff then introduced deeds from Benjamin Spruill and through mesne purchasers to *feme* plaintiff for lots 7 and 8, bounded on the north by Fearing street, east by line T A B, south by Tiber creek, and west by Poindexter street.

It was admitted defendant owned and was in possession of the parcel of land on the plat east of lots 7 and 8, bounded by Fearing street on the north, east by Pasquotank river, south by Pasquotank river and Tiber creek, and west by line T A B, and owns it under deed from plaintiffs, N. R. and C. E. Zimmerman, which deed was introduced, and made a part of this case. The plaintiffs then introduced grant from the State of North Carolina, dated July 19, 1892, covering the *locus in quo*, to-wit, that parcel of land included within lines A, B, C, D, A, and included in straight lines from plaintiffs' property to deep water on the east by Pasquotank river. The deep water lines on Pasquotank river and Tiber creek were duly established and regulated according to law as represented on the plat.

Defendant obtained a grant from the State of North Carolina, dated October 2, 1890, covering *locus in quo*, and included in lines A, B, C, D, A, and which is included in straight lines from defendant's property to the deep water on south.

Plaintiffs introduced W. G. Underwood, who testified that he did not know how far Tiber creek extended out; that water five or six years ago covered the *locus in quo*, except a small part near letter A. On cross-examination witness was asked: "You have heard the description of the lot in the deed from Benjamin Spruill to C. L. Cobb; now state

whether or not the owner of that lot has any other way to get to deep water on Tiber creek than by crossing that part included in A, B, C, D, A." (Plaintiffs objected; objection overruled, and they excepted). Witness answered, "No, sir."

Plaintiffs then asked whether plaintiff could reach the deep water of the Pasquotank river from her land without crossing the *locus in quo*, and replied, "She could not. The witness said he knew of no division of that piece of land marked lots 7 and 8; that the line on plat was only an imaginary line, and both were owned by the same parties at the same time.

C. Trueblood was introduced, and testified that he had known the *locus in quo* for forty or fifty years; that part of it was covered with water; that high land extended forty or fifty yards south of Fearing street; that the water on south of the lot described in deed from plaintiffs to defendant, and marked "A," was *sometimes called Tiber creek;* that Water street once extended south across the water, and where it crossed *was called Tiber creek.*

A. L. Jones testified that he had known the *locus in quo* for fifty years; that the water came up and covered it ever since he knew it until recently; that the water went up to near where the ice-house stands on the east and south; don't know whether the water to the south of lot described in deed of plaintiffs to defendant, was called Pasquotank river, and do not know it was called Tiber creek; that the water was not navigable except for small boats to the south of said lot; that the only way plaintiffs can reach deep water on Pasquotank river going east is by crossing the *locus in quo*, but they can reach deep water on Tiber creek without crossing it; that the water to south of plaintiffs' and defendant's property is not deep, and will not exceed four or five feet at ordinary tide.

N. R. Zimmerman was introduced and testified that he and his wife executed the deed to defendant, which conveys a lot "located on the south side of old dock and embracing the same, bounded on the east by Pasquotank river, south by said river and Tiber creek, north by old dock and Fearing street, west by the old Messenger lot, now occupied by N. R. Zimmerman and C. E. Zimmerman, thirty feet west from the site of the old warehouse, formerly occupied by William Shannon, being part of the lot sold by William Messenger to B. Spruill," etc.; that there was not much water to south of the premises described in said deed until after he had dredged it; that he had no way to front on deep water on Pasquotank river except by crossing the *locus in quo*. Upon cross-examination he admitted that he had not dredged in the channel of Tiber creek, but his dredging was done on south side of channel and alongside of his wharf on south side of said creek.

Plaintiffs rested.

Defendant introduced grant from the State of North Carolina covering the *locus in quo*.

Plaintiffs objected; objection overruled, and plaintiffs excepted.

Defendant then testified in his own behalf: That he owned the land described in deed from plaintiffs to him marked "A," and has been in possession of same since the execution of same; that he was in possession of same at the time he entered the *locus in quo* and received the grant for the same; that he had lived in Elizabeth City for twenty-four years; Tiber creek extends beyond the bridge on Poindexter street eastward to deep water on Pasquotank river; Tiber creek is navigable; boats carrying merchandise and produce and fish go up Tiber creek as far as the bridge on Poindexter street; vessels carrying several hundred bushels of oysters can and do go up Tiber creek as far as said bridge; Zim-

merman has done some dredging on south side of the chan-
nel of Tiber creek and next to Zimmerman's wharf on
south side of the channel of Tiber creek; that he has been
in the quiet possession of the property purchased of plain-
tiffs and of the *locus in quo;* no demand has ever been
made on him for same, except when summons was served,
and service of summons is the only demand that was ever
made; has driven piles and has been building wharf on the
*locus in quo* for eight or nine years; has been building
oyster-houses and filling in on part of the *locus in quo* ever
since he owned the property described in the deed; at
times the tide is very low in Tiber creek; has seen it one
time when the tide was so low in the creek you could jump
across the channel of the creek to south of my property;
part of the land purchased of plaintiffs was made land;
the deep water from my land to the east is on Pasquotank
river and to the south it is to deep water on Tiber creek.
The plaintiffs cannot reach deep water on the east of Pas-
quotank river without crossing the *locus in quo.* The deep
water on Tiber creek was established and regulated by the
Board of Town Commissioners at my request on September
23, 1890.

Defendant then introduced J. F. Snell, who testified that
he had known Tiber creek since 1856; that the said creek
extended out to deep water on Pasquotank river; that he
was one of the committee appointed by the Board of Town
Commissioners to lay out deep water on Pasquotank river
and Tiber creek, and the committee laid it out as repre-
sented on map made part of this case; that Tiber creek is
south of the property described in deed marked "A," and
is its southern boundary; that Tiber creek is navigable to
the bridge on Poindexter street; that boats go to the bridge
regularly now; that plaintiff did no dredging in channel
of Tiber creek, and the creek will float no larger boats since

the dredging than before; that the creek is navigable and vessels and schooners can go up the creek and to the south of defendant's property carrying 1,500 bushels of corn or 200 barrels of fish; that he has examined the creek, and it has a distinct channel to deep water on Pasquotank river as laid off by the Town Commissioners; that he drove the piles for defendant's wharf along the line T A B during fall of 1890; that when he was driving the piles along the line, and about twenty-five or thirty feet north of B, plaintiff N. R. Zimmerman came to him and asked if he knew the line; he told him yes; that Mr. Robinson said the line represented on this map as T A B was the line; and plaintiff N. R. Zimmerman told him not to get over that, as the defendant had ordered him not to go on defendant's land, and defendant must not come on his. He then told Zimmerman if he got a pile to the west of that line he would pull it up and drive it on line.

J. T. McCabe testified, in behalf of defendant, that Tiber creek was navigable for vessels and schooners; that the water to south of premises described in deed marked "A" was known as Tiber creek, and it extended to bridge over Poindexter street; that he had seen the creek when the tide was very low, and it had a channel extending out to deep water on Pasquotank river.

Plaintiffs requested the Court to charge as follows:

"1. Riparian rights are property incident to land abutting upon navigable water, and cannot be conveyed without a conveyance of the land to which such rights are incident.

"2. Lands covered by navigable water are subject to entry only by persons whose lands abut upon such waters, and can be entered only in straight lines extending from the front of the high land to the deep water.

"3. If the land in dispute lies between straight lines from

the front of plaintiffs' property to the deep water of Pas-
quotank river, then you will answer the first issue, ' Yes.'

"4. If the land owned by defendant, C. H. Robinson, is
made or artificial land, built up by extending eastward into
Pasquotank river, he cannot claim riparian rights to the
southward, interfering with the rights of plaintiff to extend
her property to the eastward.

"5. If the defendant enjoys the right of full commerce by
going east, and if by going south plaintiff cannot enjoy the
same equal rights, but can on going east, then plaintiffs'
riparian rights will also extend to the east in straight lines.

"6. Upon the whole evidence in the case the grant from
the State to defendant Robinson is void."

The Court gave charges 1 and 2, and refused to give 3,
4, 5 and 6, to which refusal plaintiffs excepted.

The Court, among other things, charged the jury :

"What are the boundaries is a matter for the Court; where
the boundaries are located is for the jury.  The several
calls in the deed from the plaintiffs to defendant are the
boundaries (the calls were read from the deed).  And the
jury were further instructed that Pasquotank river and
Tiber creek were the boundaries along Pasquotank river
with the creek to the western boundary.  It is for the jury
to say how located, and to say whether the defendant's line
extended to the bank of the navigable stream, and if so the
land in grant to plaintiff is not subject to entry and grant
to her."

There was verdict and judgment for defendant, and
plaintiffs appealed.

*Mr. J. W. Griffin*, for plaintiffs (appellants).
*Messrs. Grandy & Aydlett*, for defendant.

AVERY, J.: The assignment of error is in the refusal to

give certain instructions embodied in the prayer of the plaintiffs and the substitution of a different charge in its stead.    The Court instructed the jury at the request of the plaintiffs, (1) that riparian rights are property incident to land abutting on navigable water, and cannot be conveyed without a conveyance of the land to which such rights are incident; (2) that lands covered by navigable water are subject to entry only by persons whose lands abut upon such waters, and can be entered only in straight lines extending from the front of the high land to the deep water. Subsequently the jury were told in effect that it was their province to determine whether the defendant's land extended to the bank of the navigable stream, and if it did the grant to the *feme* plaintiff would be void.

The statement of the case on appeal is not so full or so clear as it could have been made.    It was incumbent on the appellant to have submitted and insisted on a proper presentation of the facts upon which he relied to sustain his contention.    It being left to the jury to determine whether the defendant's line extended to the bank of the navigable water, after they had been instructed in effect that the law would give to the riparian proprietor certain rights as an incident to his ownership of the shore, we infer that they found from the testimony, as they were warranted in finding, that the land of the *feme* plaintiff did not include the shore when the grant from the State was issued to her on the 19th of July, 1890.    The plaintiffs had by deed, with a covenant of warranty, conveyed on the first day of September, 1880, a tract of land embracing the old dock and extending south of it, "bounded on the east by Pasquotank river, south by said river and Tiber creek, north by old dock and Fearing creek, west by the old Messenger lot, now occupied by N. R. Zimmerman and C. E. Zimmerman, thirty feet west from the old warehouse formerly occupied

by William Shannon," etc.   If the jury determined that the line A B was located thirty feet west of the warehouse, and extended on the south to the banks of Pasquotank river and Tiber creek, and on the east to Pasquotank river, then wherever the shore of Pasquotank river may have been then located by accretions, the line of that deed would extend.   *Johnston* v. *Jones,* 28 Meyers' Fed. Dec., 725 ; *Jones* v. *Johnston,* 18 How., 150.   If the line A B extended to the margin of Tiber creek, and the boundary on the south and west was the creek and river, as set forth in plaintiffs' deed to defendant, then, no matter where the intersection of the creek and river may have been, the *feme* plaintiff was estopped by her covenant of warranty from asserting ownership of the territory east or north of that line. *Bell* v. *Adams,* 81 N. C., 118.   The witness Shell, who was one of the committee appointed by the Town Commissioners to mark the line of deep water, testified that the plaintiff N. R. Zimmerman told him that the defendant's line was that indicated by T A B on the map).   There was testimony, therefore, that would warrant the jury in fixing that as the location.   Even if the *feme* plaintiff subsequently entered under another title lapping upon their own deed to the defendant, but occupied only the portion south of the line A B, there was no disseizin of any part of the interference, such as to ripen her new title by an actual conflicting possession under a claim of right, and thereby destroy, after an occupation of seven years, the effect of the estoppel. Any deed made to her subsequently would feed the estoppel, and she could only have availed herself of it as color of title by actual occupation of the land previously conveyed.   *Eddleman* v. *Cook,* 7 Jones, 616.   If we concede that the *feme* plaintiff was not answerable in damages for a breach of the covenant of warranty, she was nevertheless bound by the estoppel until she had not only entered under

the new conveyance, but acquired title by possession for seven years. 14 Am. & Eng. Enc., 625; 2 Hermon, sec. 1108; Malone on Real Prop. Trials, p. 403; *Eddleman v. Cook, supra.*

The law limits the power of a married woman, so that she can only enter into certain executory agreements, enforceable as contracts in reference to her separate real and personal estate. *The Code,* §1826. But the Constitution, Art. X, sec. 6, confers upon a wife the right to devise, or, with the written assent of her husband, convey her land by deed "as if she were single." The right, with the concurrence of her husband, to execute conveyances as if she were a *feme sole,* has been held to empower her to create a lien upon her separate real estate (*Alexander v. Davis,* 102 N. C., 17; *Newhart v. Peters,* 80 N. C., 166), and if the Courts are to allow her deed to operate to any extent as if she were not under coverture, it must be conceded that the power to convey carries with it, by implication as an incident, the liability to estoppel by the covenants usually contained in conveyances.

We conclude, therefore, that it was not error to leave the jury to determine whether as a fact the defendant's deed from the plaintiffs included the water front, and to instruct them if such was the case that the issue must be found for the defendant. As the counsel for defendant conceded that the appeal was properly constituted, we will only suggest that it may be well in the future to see that exceptions and assignments of error relied upon by appellants are made to appear more explicitly.

There is no error of which the plaintiffs can complain, and the judgment must be                    Affirmed.