E. SANFORD *et al.*

*v.*

CASSA KANE.

*Filed at Ottawa May 14, 1890.*

1. MORTGAGES—*assignment—what interest passes—negotiability.* A mortgage of real estate is not negotiable or commercial paper, either at common law or under our statute, and an assignment of it does not convey or transfer the legal ownership. The right thereby acquired is equitable, only.

2. SAME—*mortgage with power of sale—who may execute the power.* Where the power of sale given in a mortgage is to the mortgagee, or to his heirs and assigns, if there is no transfer of the debt secured by the mortgage, so as to pass the legal title thereto, the power can be executed only by the mortgagee; but if the debt or note secured has been legally assigned, the assignee, as the legal holder, is the one authorized to make the sale.

3. A mortgage given to A to secure a promissory note payable to him, provided that on default of payment of the principal or interest of the debt, or any part thereof, the mortgagee, "his heirs or assigns," might sell the premises, and, in the mortgagor's name, make a deed to the purchaser. A indorsed the note to B, who transferred the same to C, by delivery, only. The mortgage was by A indorsed in blank. On default of payment, C sold the premises: *Held,* that the sale by C (he not being the legal holder of the debt) was unauthorized and void.

4. USURY—*broker's commissions—in case the lender advances his own money.* A broker negotiating loans in good faith from others, may charge the borrower commission, without rendering the loan at full rate of interest usurious. But he may not make such charge when he himself advances the money loaned, for the purpose of afterward selling the note and mortgage given to him.

5. DEED BY MARRIED WOMAN—*subsequently acquired title.* The warranty deed of a married woman, of land claimed by her, will pass to her grantee a subsequently acquired title; but when she unites in a warranty deed with her husband, of his land, merely for the purpose of releasing her inchoate right of dower, she will not be estopped from acquiring a subsequent title and asserting the same in her own favor.

WRIT OF ERROR to the Circuit Court of Iroquois county; the Hon. ALFRED SAMPLE, Judge, presiding.

Mr. B. C. COOK, for the plaintiffs in error:

Brokers negotiating loans of other people's money may charge the borrower commissions, without thereby making a loan, at the full rate of legal interest, usurious. *Hoyt* v. *Pawtucket Institution,* 110 Ill. 392; *Ballinger* v. *Bourland,* 87 id. 513; *Phillips* v. *Roberts,* 90 id. 492; *Boylston* v. *Bain,* id. 283.

As to the right of the mortgagor's grantee to interpose the defense of usury, see *Maher* v. *Lanfrom,* 86 Ill. 522; *Henderson* v. *Bellew,* 45 id. 324; *Insurance Co.* v. *Campbell,* 95 id. 280; *Valentine* v. *Fish,* 45 id. 468.

Usury will not be presumed, but must be strictly proved. *Phillips* v. *Roberts,* 90 Ill. 492; *Kihlholtz* v. *Wolf,* 103 id. 366; *Brown* v. *Mortgage Co.* 110 id. 239.

Cassa Kane having, with her husband, conveyed the land by warranty deed to Parr, reciting that the land was subject to this mortgage, she is estopped from denying the validity of the mortgage, and the title she acquired from John Kane, if any, related back to the conveyance to Parr, and was, *eo instanti,* vested in Parr.

A married woman, in so far as she is authorized to contract, is bound by her contracts, the same as a man. *Snell* v. *Snell,* 123 Ill. 403; *Bassett* v. *Bassett,* 20 Bradw. 543.

If a mortgagor sells premises, and in the deed of conveyance expressly states that it was subject to a prior mortgage, and there was a deduction in the price of the land equal to the incumbrance, the purchaser could only redeem by paying the incumbrance, with legal interest, and can not set up usury. *Maher* v. *Lanfrom,* 86 Ill. 520; *Shufelt* v. *Shufelt,* 9 Paige, 145; *Hartley* v. *Harrison,* 24 N. Y. 170; *Henderson* v. *Bellew,* 45 Ill. 323; *Valentine* v. *Fish,* id. 462; Taylor on Usury, 403.

One may affirm the validity of the transaction by selling the land subject, in express terms, to the previous mortgage, in which case the purchaser can not question the validity of the prior mortgage. *Morris* v. *Floyd,* 5 Barb. 130; *Wells* v. *Chapman,* 13 id. 561; *Valentine* v. *Fish,* 45 Ill. 462; *Maher* v. *Lan-*

*from,* 86 id. 513; *Green* v. *Kemp,* 13 Mass. 515; *DeWold* v. *Johnson,* 10 Wheat. 367; *Springler* v. *Snapp,* 5 Leigh, 478; *Ready* v. *Heubner,* 46 Wis. 792; 32 Am. Rep. 756, and note; *Stephen* v. *Muir,* 8 Ind. 352; *Cramer* v. *Lepper,* 26 Ohio, 59; 27 Am. Rep. 58, and cases cited in note; *Huff* v. *Horsey,* 36 Md. 181; 11 Am. Rep. 484; *Pickett* v. *Nat. Bank,* 32 Ark. 346; *Lee* v. *Feamster,* 45 Am. Rep. 549, and case cited; *Henderson* v. *Bellew,* 45 Ill. 322; *Pinnell* v. *Boyd,* 33 N. J. Eq. 190; *Doleman* v. *Crane,* 14 id. 63; *Thatcher* v. *Stone,* 3 Pick. 253; *Housatonic Bank* v. *Martin,* 1 Metc. 307; *Rasley* v. *Dudley,* 3 id. 149; *Gerrish* v. *Mace,* 9 Gray, 239; *Green* v. *Comb,* 13 Mass. 513; *Nat. Bank* v. *Bingham,* 28 Am. Rep. 400; Colebrook on Collaterals, 162; 1 Sutherland on Damages, 563; *Hartley* v. *Harrison,* 24 N. Y. 170; 22 Am. Rep. 290, note.

Mr. ROBERT DOYLE, for the defendant in error:

Cassa Kane was not liable on the covenants of warranty in the deed of Kane to Parr, as the title was in John Kane, and all the interest she had before joining in the deed to Parr was an inchoate right of dower. A wife joining with her husband merely for the purpose of releasing her inchoate right of dower, will not be bound by the covenants of warranty in such deed, for the reason that such was not the intention of the parties.

The sale by one not having the legal title by indorsement, was void. *Mason* v. *Ainsworth,* 58 Ill. 165; *Insurance Co.* v. *Slee,* 123 id. 94.

A mortgage is not assignable by indorsement, either at common law or under the statute, and power of sale would remain in the mortgagee, if the notes were not assigned. *Hamilton* v. *Lubukee,* 51 Ill. 415; *Strother* v. *Law,* 54 id. 416; *Bush* v. *Sherman,* 80 id. 165; *Dempster* v. *West,* 69 id. 618.

Where the debt is evidenced by a note or bond separate from the mortgage, the rule in this State is, that the assignment of the debt carries the mortgage, and the mortgage has

no validity separate from the debt. *Insurance Co.* v. *Slee*, 123 Ill. 93; 90 id. 533.

All purchasers at mortgagee's sale are chargeable with notice of all defects and irregularities affecting the sale, and can not evade their effect. *Hamilton* v. *Lubukee*, 51 Ill. 420.

Under the above authorities they can take either horn of the dilemma they choose, and say there was no note, and the sale is void, as no one could make it but Sanford; or, there was a note, and then no one could make it but Whittlesey, as he was the assignee thereof. They may claim the assignment on the separate piece of paper to Wilkinson operated as an assignment of the debt and the mortgage; but this has been set at rest against them by the Supreme Court, in *Hamilton* v. *Lubukee*, 51 Ill. 416, and *Fortier* v. *Darst*, 31 id. 212.

Where usury is reserved on a note given for money loaned, by taking five per cent in advance from the principal sum, and making the note given for the whole sum bear ten per cent interest from date, no interest can be recovered on the note, and all payments of interest will be applied on the principal. *Mitchell* v. *Lyman*, 77 Ill. 625; *Hewitt* v. *Dement*, 57 id. 500.

This is no doubt the law where the payee sues on the note; but on a bill to redeem it will be modified, to the extent that the payer must pay six per cent interest, as was decreed in this case, as he who seeks equity must do equity. *Tooke* v. *Newman*, 75 Ill. 217; *Clark* v. *Finlon*, 90 id. 248.

A party can not, as a means of paying an agent for services rendered, take more than legal interest, claiming that it is for commissions. *Payne* v. *Newcomb*, 100 Ill. 611.

Cassa Kane being one of the makers of the note, may avail herself of the defense of usury. *Maher* v. *Lanfrom*, 86 Ill. 520; *Safford* v. *Vail*, 22 id. 327.

Mr. CHIEF JUSTICE SHOPE delivered the opinion of the Court:

This bill was filed to set aside the sale of land made under a power in the mortgage given by Morris Kane, joined by his wife, Cassa Kane, October 15, 1875, to E. Sanford, and to redeem from said mortgage. The mortgage secures the payment of $500 three years after date, with interest at ten per cent, payable semi-annually. There was executed, contemporaneously with the mortgage, by Kane and wife, a note for $500, signed by Kane and wife, payable to Sanford, and bearing interest as mentioned in the mortgage. While the mortgage does not mention a note, the proof shows that they were parts of the same transaction, and given to secure the same loan, the note being required as further security, should there be any deficiency on a sale under the mortgage. The mortgage provided, that in case of default in the payment of the debt, or any part thereof, "the said grantee, his heirs or assigns," may sell the mortgaged premises, etc., "and in his name or in my name, or as my attorney in fact," make a deed to the purchaser or purchasers. September 15, 1876, Sanford indorsed the note to one Edgar G. Whittlesey, and on the same day made to Whittlesey a separate written instrument, purporting to assign and transfer the mortgage, and also placed his name in blank upon the mortgage. September 2, 1879, Whittlesey made a similar written assignment of the mortgage to George Wilkinson, but no assignment of the note, and delivered the note and mortgage to him. The interest was paid to July 20, 1878, the maturity of the note. Default was made in the payment of principal, and on October 16, 1879, Wilkinson, claiming to be the assignee of the mortgage debt, sold the land under the power contained in the mortgage, having previously given notice, according to the terms of the mortgage, of the sale to take place on that day, at two o'clock P. M. Just before the hour of sale, Morris Kane and Wilkinson met, and the proof tends to show that it was agreed that the sale

should be postponed until four o'clock, to enable Kane to procure the money to pay off the debt; but during his absence, and before the hour of postponement had arrived, Wilkinson sold the property to Sanford for $300, and refused to do anything further, referring Kane to Sanford.

The first and one of the principal questions is, whether the power of sale was executed by a person authorized by the mortgage to execute the same. If it was, the sale must stand, in the absence of other grounds of objection; but if made by one not authorized by the mortgage, then it was void, and no title passed by the sale and deed.

The power of sale was given by the mortgage to the mortgagee, or to his heirs or assigns. If there was no transfer of the debt, so as to pass the legal title thereto, the power could be executed only by the mortgagee; but if the debt was legally assigned, the assignee was the one authorized to make the sale. In *Hamilton* v. *Lubukee*, 51 Ill. 415, the mortgage contained a power of sale, given to "the mortgagee, his heirs or assigns," in case of default. The notes in that case were never assigned, but were sold and delivered to Eisendrath & Co., but the mortgage was assigned by an indorsement made thereon. The court said: "The mortgage not being an assignable instrument, either at common law or under the statute, the power to sell remained with the mortgagee." And the court referred to *Olds* v. *Cummings*, 31 Ill. 188, and *Pardee* v. *Lindley*, id. 174. See, also, *Strother* v. *Law*, 54 Ill. 413; *Mason* v. *Ainsworth*, 58 id. 163; *Dempster* v. *West*, 69 id. 618; *Bush* v. *Sherman*, 80 id. 160; *Union Mutual Life Ins. Co.* v. *Slee*, 123 id. 93; *Delano* v. *Bennett*, 90 id. 533.

If the note was secured by the mortgage, its legal holder would be authorized to execute the power of sale. Whittlesey, being the assignee of the note, could alone make the sale, if the note was secured by the mortgage, and the sale by Wilkinson, the note not having been indorsed to him, was unauthorized and void. A mortgage of real estate is not negotiable or

commercial paper, either at common law or under our statutes, and an assignment of it does not convey or transfer the legal ownership. The right acquired is an equitable right, only, so that in any event Wilkinson was not the legal assignee of Sanford. As we have seen, the legal title to the note was in Whittlesey, by its indorsement to him by the payee, Sanford, and not in Wilkinson. The mortgage being a mere chose in action, and not assignable, the right to make the sale, if the mortgage is to be treated independently of the note, would remain in the mortgagee. The sale, having been made by Wilkinson, was therefore void, and there has been no valid foreclosure of the equity of redemption. It follows, that the mortgagors have a right to redeem from the mortgage by the payment of the sum legally due thereon. It will be unnecessary to consider, in this view, whether Wilkinson was guilty of such conduct at the sale as would equitably entitle the complainant below to the relief sought by her bill.

The right to redeem from the mortgage being established, the question of usury presented by the pleadings becomes material. It is conceded that Kane received only $475 of the $500 for which the note and mortgage were given. Sanford contends that the $25 retained by him out of the loan was not usury, but was commission paid him by Kane for procuring the loan. Undoubtedly, a broker, negotiating loans in good faith from others, may charge the borrower commission without rendering the loan, at full rate of legal interest, usurious. *Hoyt* v. *Pawtucket Institution for Savings*, 110 Ill. 392; *Phillips* v. *Roberts*, 90 id. 492; *Boylston* v. *Bain*, id. 283; *Ballinger* v. *Bourland*, 87 id. 513.

The question here made is one of fact. Was the loan made by Sanford or by Whittlesey? Looking at the papers executed by the Kanes, and the acts of the parties, the conclusion that it was in fact made by Sanford seems irresistible. He took the note and mortgage to himself, and furnished the money by his draft, long before the assignment to Whittlesey. If Sanford

was loaning money for Whittlesey, or if the latter had agreed to make the loan, the usual course would have been to have taken the securities directly to him. Sanford, it appears, controlled the securities, and finally became the purchaser of the property. Without entering into detail, we are not satisfied that the money in fact loaned belonged to Whittlesey, or to any one other than Sanford. The transaction was evidently one, not infrequent, where a loan is taken at a high rate of interest, and subsequently sold to investors of money. If Sanford in fact made the loan, he could not divest the transaction of the taint of usury by afterwards selling the note and mortgage to Whittlesey. To sanction such a transaction would be to uphold a palpable evasion of the statute. We think the court below properly held that the evidence shows the transaction to be usurious. The defendant in error having sought relief in a court of equity, was bound to submit to equitable terms, and the court therefore very properly decreed that she should pay six per cent interest per annum on the loan as a condition of her right to redeem.

The point is made that Cassa Kane, when she filed this bill, October 15, 1881, had no interest in the land, and therefore had no standing in a court of equity to set aside the sale and redeem from the mortgage. The facts upon which the contention is based are substantially as follows: Morris Kane was the owner of the land, said Cassa having only an inchoate right of dower. After their mortgage to Sanford, February 21, 1876, Morris Kane, his wife not joining in the deed, conveyed the land to his father, John Kane. No conditions were inserted in this deed, and the grantee assumed no obligations in respect to the Sanford mortgage. On March 27, 1879, (the title to the land then being in John Kane,) Morris, and Cassa Kane, his wife, by warranty deed, purported to convey the land to one John C. Parr, subject to the Sanford mortgage. It is clear that at that time Cassa Kane had no interest in the land other than perhaps her inchoate right of dower, and not that

interest as against the Sanford mortgage. The title not being in either Morris or Cassa Kane, Parr took nothing by his deed. It is unnecessary for us to determine here what obligation he assumed in respect of this mortgage, or what would have been the effect of his deed in a suit by Sanford, or the holder of this mortgage, to fix liability upon him under said deed. On the 3d of October, 1881, John Kane, the holder of the equity of redemption, and having the right to redeem from the Sanford mortgage, conveyed all his estate, right, title and interest in this property to Cassa Kane, and it is by virtue of the title thus acquired that she claims the right to file this bill. Her right to do so would not be disputed if she had not united with her husband in the warranty deed to Parr. It is contended, however, by plaintiff in error, that whatever title she acquired by the deed from John Kane inured to the benefit of her former grantee, Parr, and that she is estopped by her covenants of warranty from disputing that the title is vested in him under her deed.

At common law a married woman was not estopped by the covenants in her deed, or in those of her husband in which she joined. 2 Devlin on Deeds, sec. 1287; Bigelow on Estoppel, (3d ed.) 277; *Strawn* v. *Strawn,* 50 Ill. 33; *Patterson* v. *Lawrence,* 90 id. 174. It is claimed that section 6, chapter 68, of the statute relating to husband and wife, has changed this rule of the common law. That section reads: "Contracts may be made and liabilities incurred by a wife, and the same enforced against her, to the same extent and in the same manner as if she were unmarried; but, except with the consent of her husband, she may not enter into or carry on any partnership business," etc. The question is directly presented whether this change in the rule of the common law subjects the defendant in error to estoppel by the covenants in her deed to Parr. If it does, then the title subsequently acquired will inure to the benefit of her grantee holding her deed containing covenants of warranty.

The statutes enlarging the rights and obligations of married women are of comparatively recent date, and we have been unable to find any considerable authority bearing upon the question. By the statute of Massachusetts, (chap. 108, sec. 63,) every married woman is made capable of selling and conveying her separate real and personal property, entering into contracts in respect to the same, and of suing and being sued in respect of all matters relating thereto, in the same manner as if she were sole. In *Knight* v. *Thayer*, 125 Mass. 25, an analogous question was presented, and the court said: "By the common law of Massachusetts, the warranty deed of a married woman, though executed in such form as to convey her title, did not operate against her by way of covenant or of estoppel, because she was incapable of binding herself by warranty, or by agreement to convey her real estate." After giving the substance of the statute, the court further says: "Any conveyance or contract executed by a married woman in accordance with the power thus conferred, is binding upon and may be enforced against her to the same extent as if she was unmarried." The court then held that a warranty deed of a married woman of her land would pass to her grantees a subsequently acquired title.

Under our statute, married women may make contracts that will be enforced against them, but their conveyances, in order to bind them in respect of their real estate, must have for their object the disposition, in some form, of their lands, or of some right or interest relating to their lands. Where a married woman joins with her husband in his deed for the sole purpose of enabling him to pass the title free from her inchoate right of dower, such deed can not be said to be her contract for any other purpose than to release her dower. A court of equity, when its power is invoked, will look beyond the mere form and into the substance of the transaction, and give effect to the contracts of parties according to the true intent and meaning which the parties themselves understood and attached

to them at the time they were made. It can not be said, at least in equity, that by signing and acknowledging the deed of her husband for the sole purpose of releasing her dower, she makes the deed her own, and subjects her to liability on the covenants of title. The deed may operate as a conveyance, release or acquittance, only, or it may create a contract obligation, as, where the party covenants in respect of the estate granted.

In *Strawn* v. *Strawn, supra,* Strawn and his wife, by their deed, conveyed land of the husband to their daughter and the heirs of her body forever, and the grantors covenanted, for themselves, their heirs and assigns, to forever warrant and defend the same. The usual acknowledgment of its execution was taken, in which the wife formally relinquished her dower. The daughter died without issue. After. the husband's death the wife claimed the land by right of survivorship. The fact that Mrs. Strawn joined in the deed was claimed to be evidence. establishing the joint ownership in herself and husband. It was also claimed that the heirs of Jacob Strawn, the grantor, were estopped by the covenants in the deed. This court, however, held, that the wife joined in the execution of the deed, in compliance with the statute, in order to release her dower, and for that purpose only, and that the covenants therein could not have the effect insisted upon. It is there said: "But is it true, that by force of the act of 1861 appellant (the wife) could be bound by the covenants in this deed? Had it been her own land, and her husband had united in a conveyance of it containing covenants, she could not be held responsible upon them any further than that they should be held to convey from her and her heirs her right and interest in the land,— and this immunity is not destroyed by the act of 1861. If that act makes her responsible on covenants contained in a deed she may execute for her own land, how it can be said to make her liable on covenants in a deed for land to which she set up no title, and joined in its execution for the sole and only pur-

14—133 ILL.

pose of releasing any future right she might have as a wife surviving her husband, the owner of the fee, we fail to perceive.'"

We have not failed to note the difference between the rights of married women under the statutes in force when these deeds were made, and those given by the act of 1861. The foregoing case aptly illustrates the view that will be taken in the construction of deeds of married women.

Before proceeding further, it should be said that the deed to Parr did not purport to be that of the wife, Cassa Kane. She had, and claimed to have, no title or interest in the land other than her inchoate dower. She had nothing that could be conveyed by deed. The Conveyance act provides the mode by which she may relinquish her dower "in any of the real estate of her husband, or in any real estate," by joining him in a deed. And if she join with her husband in a conveyance of his land merely for the purpose of releasing her dower, she will not, in equity, be held liable upon the covenants of the deed. It should also be observed that Parr is making no claim to this land. He does not claim that the title was vested in him by the deed from John Kane to Cassa Kane. Plaintiff in error does not claim by, through or under Parr, and we are unable to perceive upon what principle he can be permitted to insist upon the estoppel. There is no proof that Parr paid anything for the deed to himself, or has at any time attempted, or is now attempting, to assert any title thereunder.

We are of opinion that Mrs. Kane, defendant in error, is not estopped by the deed to Parr from asserting title under the deed from John Kane to herself. We are of opinion that under the facts here shown, she having joined in making the deed to Parr for the single purpose of relinquishing her dower right, if she had any, in the land, the title subsequently acquired by her would not inure to the grantee in such deed.

We find in this record no substantial error, and the decree is therefore affirmed.

*Decree affirmed.*