ANNA MARTIN, formerly Anna Volk, v. EDWARD L. YAGER et al. (Edward L. Yager, appellant alone).

(153 N. W. 286.)

**Deceased entryman — widow of — husband's residence — completed by widow — patent — mortgage — joined in by both — personal promise by widow to pay — estoppel — foreclosure — purchaser under.**

1. The widow of a deceased entryman who takes advantage of the provisions

---

Note.—As to the effect of covenants of married women and their estoppel by deed or mortgage, see notes in 22 L.R.A. 779, and 28 Am. Rep. 374.

30 N. D.—37.

of U. S. Rev. Stat. §§ 2291, 2301, 6 Fed. Stat. Anno. 292, 317, Comp. Stat. 1913, §§ 4532, 4589, and completes her husband's residence and obtains a patent from the government, but who, during the lifetime of her husband, joined with him in a mortgage on the land in question in which she personally promised to pay the debt secured, and executed personal covenants of seisin and quiet possession, is estopped by such covenants from asserting her after-acquired title in an action brought by her to determine adverse claims and to quiet title as against the purchaser under the foreclosure of said mortgage.

On Petition for Rehearing.

**Foreclosure by advertisement — notice published — excessive amount stated in — validity of sale — not affected — fraud — injury.**

2. Claiming in the notice of foreclosure by publication more than is due on the mortgage will not affect the validity of the sale, unless it appears that it was done with a fraudulent purpose, or that it has resulted in actual injury to the mortgagor.

Opinion filed February 17, 1915.  On petition for rehearing June 2, 1915.

Appeal from the District Court of Pierce County, *Burr, J.*

Action to determine adverse claims to real estate.  Judgment for plaintiff.  Defendant appeals.

Reversed.

Statement of facts by BRUCE, J.

This is an action to quiet title and to determine adverse claims to real estate.  Michael Volk filed on a quarter section of government land.  Thereafter he and his wife (the plaintiff, Anna Martin, formerly Anna Volk) gave a mortgage on the land to secure certain notes signed by Michael Volk alone, and which represented his personal indebtedness alone.  The mortgage, however, was signed and acknowledged by both husband and wife, and contained both a joint promise to pay the indebtedness which it secured and a joint covenant of quiet possession.  Volk died before proving up or earning the right to a patent.  Thereupon his wife, Anna Volk, completed the term of residence required, and proved up upon the land and received her patent under the provisions of §§ 2291, 2301, U. S. Rev. Stat., 6 Fed. Stat. Anno. 292, 317, Comp. Stat. 1913, §§ 4532, 4589, § 32, Circular No. 10, of the Department of the Interior.

A little over a year after such final proof by her, the mortgage was foreclosed by one George Dickey, to whom it had been assigned during the lifetime of the deceased entryman, and the premises were bid in by the said Dickey, and later the sheriff's certificate was assigned to the defendant and appellant, Edward Yager, and a sheriff's deed issued to him. Later this action was brought by Anna Martin, formerly Anna Volk, to determine adverse claims and to quiet title as against said mortgage, and a judgment was entered in her favor, from which the defendant has appealed and asks for a trial *de novo*.

*Torger Sinness* and *Middaugh, Cuthbert, Smythe, & Hunt,* for appellant.

Title acquired by the mortgagor subsequently to the execution of the mortgage inures to the mortgagee as security for the debt, in like manner as if acquired before the execution. Rev. Codes 1905, § 615; Comp. Laws 1913, § 958; Civ. Code 1877, § 1727, subsec. 2; U. S. Rev. Stat. § 2291, Comp. Stat. 1913, § 4532.

A mortgagor is estopped from asserting the invalidity of his mortgage through lack of title, contrary to the covenants of the mortgage contract. Rev. Codes 1905, § 6155; Comp. Laws 1913, § 6731; Sommers v. Wagner, 21 N. D. 531, 131 N. W. 797; Sandwich Mfg. Co. v. Zellmer, 48 Minn. 408, 51 N. W. 379; Adam v. McClintock, 21 N. D. 483, 131 N. W. 394; Clark v. Baker, 14 Cal. 612, 76 Am. Dec. 449.

The fact that title subsequently comes from the United States makes no difference. It is the voluntary contract of the party in executing the mortgage that prevails. Kirkaldie v. Larrabee, 31 Cal. 455, 89 Am. Dec. 205; Clark v. Baker, 14 Cal. 630, 76 Am. Dec. 449; Orr v. Stewart, 67 Cal. 275, 7 Pac. 693; Christy v. Dana, 42 Cal. 174; Camp v. Grider, 62 Cal. 20; Vallejo Land Asso. v. Viera, 48 Cal. 572.

A homesteader may make a valid mortgage on the land while it is yet owned by the government, and his title subsequently acquired inures to the mortgagee as security for the debt. Weber v. Laidler, 26 Wash. 144, 90 Am. St. Rep. 726, 66 Pac. 401; 2 Herman, Estoppel, § 895, p. 1018.

Either husband or wife may enter into any engagement with the other, or with any other person, respecting property, which the other

might enter into if unmarried.      Colonial & U. S. Mortg. Co. v. Stevens, 3 N. D. 265, 55 N. W. 578.

*H. B. Senn,* for respondent.

Where a homestead entryman files on a government homestead, and after such filing he and wife execute a mortgage on such land, and thereafter such entryman dies before making final proof and before earning the right to patent, and the widow completes the residence and makes proof and receives patent in her own name, the mortgage is not a valid instrument.    Marley v. Sturkert, 62 Neb. 163, 89 Am. St. Rep. 749, 86 N. W. 1056; Bergstrom v. Svenson, Ann. Cas. 1912C, 699, note.

Such a mortgage is ineffectual to constitute a lien as against those who, under the public land laws, had fulfilled the requirements of the law and obtained patent.    Cheney v. White, 5 Neb. 261, 25 Am. Rep. 487; Webster v. Bowman, 25 Fed. 889; Rogers v. Clemmans, 26 Kan. 522; Schoolfield v. Houle, 13 Colo. 394, 22 Pac. 781; Wittenbrock v. Wheadon, 128 Cal. 150, 79 Am. St. Rep. 32, 60 Pac. 664; Gjerstadengen v. VanDuzen, 7 N. D. 613, 66 Am. St. Rep. 679, 76 N. W. 233; 32 Cyc. 1076, note 36; Herbert v. Brown, 65 Fed. 2; 26 Am. & Eng. Enc. Law, 411, note 7.

A person may make a valid mortgage on public land if he thereafter makes proof and obtains patent.    Bull v. Shaw, 48 Cal. 455; Rogers v. Minneapolis Threshing Mach. Co. 48 Wash. 19, 92 Pac. 774, 95 Pac. 1014; Stewart v. Powers, 98 Cal. 514, 33 Pac. 487; Weber v. Laidler, 26 Wash. 144, 90 Am. St. Rep. 726, 66 Pac. 400; Freese v. Rusk, 54 Kan. 274, 38 Pac. 255; McCune v. Essig, 199 U. S. 382, 50 L. ed. 237, 26 Sup. Ct. Rep. 78; U. S. Rev. Stat. §§ 2291 and 2292; Comp. Stat. 1913, §§ 4532, 4543.

Heirs take as new entryman.    Bernier v. Bernier, 147 U. S. 242, 37 L. ed. 152, 13 Sup. Ct. Rep. 244.

Upon the death of an entryman, his rights cease.    His heirs are given a mere preference as new homesteaders.    Towner v. Rodegeb, 33 Wash. 153, 99 Am. St. Rep. 936, 74 Pac. 50; Aspey v. Barry, 13 S. D. 220, 83 N. W. 91; Gould v. Tucker, 20 S. D. 226, 105 N. W. 624; Bergstrom v. Svenson, 20 N. D. 55, 126 N. W. 497, Ann. Cas. 1912C, 694; Shiver v. United States, 159 U. S. 491, 40 L. ed. 231, 16 Sup. Ct. Rep. 54; Campbell v. Wade, 132 U. S. 34, 33 L. ed. 240, 10 Sup.

Ct. Rep. 9; Wagstaff v. Collins, 38 C. C. A. 19, 97 Fed. 3; Frisbie v. Whiting, 9 Wall. 187, 19 L. ed. 668.

Those who are given such preference right perform the conditions not as successors in interest, but as grantees or donees of the government. Shepley v. Cowan, 91 U. S. 330, 23 L. ed. 424; Gonzales v. French, 164 U. S. 338, 41 L. ed. 458, 17 Sup. Ct. Rep. 102; Anderson v. Carkins, 135 U. S. 483, 34 L. ed. 272, 10 Sup. Ct. Rep. 905; Hall v. Russell, 101 U. S. 503, 25 L. ed. 829; Maynard v. Hill, 125 U. S. 190, 31 L. ed. 654, 8 Sup. Ct. Rep. 723; Wittenbrock v. Wheadon, 128 Cal. 150, 79 Am. St. Rep. 32, 60 Pac. 664; Towner v. Rodegeb, 33 Wash. 153, 99 Am. St. Rep. 936, 74 Pac. 50; Dawson v. Mayall, 45 Minn. 408, 48 N. W. 12; Gjerstadengen v. VanDuzen, 7 N. D. 612, 66 Am. St. Rep. 679, 76 N. W. 233; Hershberger v. Blewett, 55 Fed. 177; 26 Am. & Eng. Enc. Law, 255.

At the time Anna Martin (Volk) signed the mortgage with her husband, she merely released her possible homestead right in the land. She did not become a surety for the husband. Omlie v. O'Toole, 16 N. D. 126, 112 N. W. 677; Roberts v. Roberts, 10 N. D. 531, 88 N. W. 289; Kuhnert v. Conrad, 6 N. D. 215, 69 N. W. 185; Helgebye v. Dammen, 13 N. D. 167, 100 N. W. 245; 21 Cyc. 543; Yerkes v. Hadley, 5 Dak. 324, 2 L.R.A. 363, 40 N. W. 340.

Bruce, J. (after stating the facts as above). There can be no doubt that, under the common law rule and in the absence of a married woman's act such as we have in North Dakota, the covenants of the wife would be merely deemed a waiver of her homestead interest, and that the wife would not be estopped from asserting her after-acquired title.

This rule, however, is based upon the old common-law theory of the contractual incapacity of a married woman. Griner v. Butler, 61 Ind. 362, 366, 28 Am. Rep. 675; Blain v. Harrison, 11 Ill. 384; Knight v. Thayer, 125 Mass. 25.

It can have no application in a state like North Dakota, where that incapacity has been entirely removed by the statute, and a married woman has the same contractual ability as a *feme sole* or as her husband himself. Griner v. Butler, 61 Ind. 362, 366, 28 Am. Rep. 675; Guertin v. Mombleau, 144 Ill. 32, 33 N. E. 49; Knight v. Thayer,

125 Mass. 25; Zimmerman v. Robinson, 114 N. C. 39, 19 S. E. 102; Yerkes v. Hadley, 5 Dak. 324; 2 L.R.A. 363, 40 N. W. 340; Hill v. West, 8 Ohio, 225, 31 Am. Dec. 442; Adam v. McClintock, 21 N. D. 483, 131 N. W. 394; § 6155, Rev. Codes 1905, § 6731, Comp. Laws 1913.

The act of this state provides that "either husband or wife may enter into *any engagement* or transaction with the other *or with any other person* respecting property which the other might *if unmarried.* The wife, after marriage, has, with respect *to property* . . . *the same liabilities as before marriage,* and in all actions by or against her she shall sue and be sued in her own name." Section 4411, Compiled Laws of 1913. In the mortgage before us the wife not merely agreed to pay the debt (though she did not sign the notes), but she made express covenants of quiet enjoyment. The mortgage, indeed, can well be held to have been given in contemplation of just such a contingency as that before us. In it "the said Michael Volk and Anna Volk, his wife, further covenant, and agree to and with the said party of the first part, his heirs, executors, administrators, and assigns, to pay said sum of money above specified at the time and in the manner above mentioned." The mortgage in question further recites that both of said parties "are lawfully seised of the said premises, and that they have good right to convey the same; that the same are free from all encumbrances; that the said party of the second part, his heirs and assigns, shall quietly enjoy and possess the same, and that the said parties of the first part will warrant and defend the title to the same against all lawful claims."

We can see no reason why, in a court of equity at any rate, these covenants should not be held to be binding. We held, it is true, in the case of Martyn v. Olson, 28 N. D. 317, 148 N. W. 834, that the heirs of a deceased entryman who completed the proof after the death of such entryman took, not as heirs, but as donees or purchasers of the land, and that they could not be required to pay a mortgage which was given by the entryman during his lifetime. In that case, however, the heirs had nothing to do with the original loan, and had agreed to pay no sum or sums of money whatever; nor had they entered into any covenants of warranty or of quiet possession. They took from the government as new purchasers or donees, and not as heirs, and

though the original mortgage may have contained covenants of warranty and of quiet possession which nominally bound the heirs as well as the mortgagors, such covenants had not been personally entered into by them, and even if they ran with the land, ceased when the title in the mortgagors became extinguished and reinvested in the government.

In the case at bar, however, we have a proceeding in equity where the plaintiff seeks to have the title quieted in her. At the threshold she is not merely met by a covenant made by her ancestor which was extinguished when the title was reinvested in the government, but by a personal promise and covenant which she herself made. Surely the maxims apply that "he who seeks equity must do equity," and that "he who comes into a court of equity must come with clean hands." Can she, in a court of equity, seek to quiet title in herself when she herself has promised to quiet and defend that title in the defendant? We hold that she cannot.

Not only is this holding in conformity with the principles of equitable jurisprudence, but it is, we believe, in accordance with a sound public policy. There is every reason to believe that the credit was extended in the case at bar on the assumption that, even if the husband died before final proof, his wife, if she completed his entry, would live by his contract. The necessity of giving mortgages before the time of final proof is a fact, and not a theory among us. Even the Federal government has yielded to this fact. It first held that no such mortgage was valid. It and the courts subsequently held that such mortgages were enforceable provided that the entryman proved up before his death, and the title became vested when such proof was made. See Martyn v. Olson, supra; Adam v. McClintock, 21 N. D. 483, 131 N. W. 394; Weber v. Laidler, 26 Wash. 144, 90 Am. St. Rep. 726, 66 Pac. 401. They did this because of the exigencies of the situation, and not that the entryman might be injured and defrauded, but that he might be able to obtain credit, without which he would often lose the results of all of his labor and sacrifices. They, in short, took cognizance of the fact that dry seasons and failures of crops have been only too common; that the entryman must live during his period of residence and proof, and that unless such entryman can get credit from the local merchants and banks by giving some measure of security

and obtain the household necessities and machinery during the dry years, hardship and loss will often result. The rule which it announced is, we believe, not only equitable, but salutary and necessary. It is unreasonable to expect that the local merchants and banks will extend credit without some measure of security. The mortgage to be obtained is at the most unsatisfactory, for if the entryman dies before the making of final proof, it will in most instances become void, and can be saved only by the wife completing the proof, if perchance she is bound thereby. Why should not the creditor, as a condition to making the loan or extending the credit, require an assurance by the wife that she will protect the mortgage, and why should not that assurance be held to have been given and to be enforceable where the wife, by the express terms of the mortgage, not merely agrees to pay the debt, but covenants and agrees to uphold the conveyance?

In speaking generally on the subject of the right of a wife to assert an after-acquired title, against the covenants of a prior conveyance, the supreme court of Minnesota in the case of Sandwich Mfg. Co. v. Zellmer, 48 Minn. 408, 51 N. W. 379, says: "The question here presented is whether the defendant Fredericke, who expressly joined in the covenants in the mortgage to plaintiff, is bound thereby; for if she is liable thereon, or is estopped thereby, as if she had not been under coverture, the conveyance to her inured to the benefit of the plaintiff by virtue of her covenant, and its mortgage is operative as a valid subsisting lien upon the land, as against her and her assignee, Herman Zellmer. It is hardly necessary to refer to the nature of a married woman's disability at the common law. She was not bound by her contracts or covenants, and was not estopped thereby from setting up an after-acquired title. It was competent for the legislature to emancipate her from such disability, and enable her to obligate herself as if unmarried. The question here involved turns upon the construction of the statute of this state touching the rights and liabilities of married women. Prior to the act of 1869, chap. 56, the statute had secured to them their separate estate, real and personal, with the rents, profits, and income thereof. But she could not dispose thereof without the consent of her husband; and her general common-law disability to make contracts remained. Pub. Stat. 1858, chap. 61, § 106, p. 571; Revision 1866, Gen. Stat. chap. 69, p. 499; and chap. 40, p. 328, § 2;

Carpenter v. Leonard, 5 Minn. 163, Gil. 119; Tullis v. Fridley, 9 Minn. 81, Gil. 68. But the provisions of the Laws of 1869 (chapters 56, 57) were radical and sweeping, and were intended, in respect to her contracts, to invest a married woman not merely with the right to contract in respect to her separate property, but with all the rights and liabilities of a *feme sole,* save only as expressly excepted or reserved by the same statute. It was evidently the intention of the legislature to define clearly the nature and extent of such rights and liabilities. Kingsley v. Gilman, 15 Minn. 61, Gil. 40; Northwestern Mut. L. Ins. Co. v. Allis, 23 Minn. 337. This statute does not, of course, have any reference to the domestic relations, or affect the rules of evidence, or the duty of the husband to provide for his family, though the wife might obligate herself for such purpose. Flynn v. Messenger, 28 Minn. 209, 41 Am. Rep. 279, 9 N. W. 759. In Northwestern Mut. L. Ins. Co. v. Allis, supra, the wife had mortgaged her separate real property to secure a debt of her husband, which was evidenced by their joint note. The mortgage was not only held valid, but she was held personally liable for the deficiency upon foreclosure by action. It was contended that she was not liable because of the provisions of § 3, which exempted her from the debts of her husband; but the court says (page 341): 'To give this effect to the section would be to allow inference and conjecture to qualify and restrict the meaning of the clear and precise language of the act removing the wife's common-law disability to contract. Section 2 provides that "any married woman shall be capable of making any contract, either by parol or under seal, which she might make if unmarried, and shall be bound thereby." Then follow clearly expressed exceptions to her power to contract without her husband, relating only to her real estate. Section 4 expressly retains the common-law disabilities of husband and wife to contract with each other relative to the real estate of either. . . . "But in relation to all other subjects either may be constituted the agent of the other, or contract each with the other, as fully as if the relation of husband and wife did not exist." ' No doubt, the defendant in that case would have been bound upon her covenants in the mortgage as well as her husband, and a covenant of warranty would have passed an after-acquired title. Knight v. Thayer, 125 Mass. 27; Bigelow, Estoppel, 5th ed. 406, 407; Kenworthy v. Sawyer, 125 Mass.

28; Goodnow v. Hill, 125 Mass. 587. In the case at bar the defendant Fredericke, as to the payee, the plaintiff, made the debt her own by signing the note. She joined in the mortgage of the quarter section containing the homestead, to secure this debt. She also joined in the covenants therein, including the covenant of warranty. It is contended, however, that she is not bound by the covenants in the mortgage, because she must be presumed to have joined in the mortgage solely for the purpose of releasing the homestead or dower interest in the land; and it is claimed that the authorities in other states, particularly Illinois, support this contention. But no consistent general rule can well be formulated under the varying statutes of the different states on the subject, in connection with local statutes regulating the conveyance of real estate. It is true, the wife's signature was necessary to pass a perfect title; but she was under no disability whatever in the matter of the execution of a deed with covenants, or the acknowledgment thereof. Though described as wife, her acknowledgment, under the statute, is that of a *feme sole*. Her husband was insolvent, and her covenants would afford additional security to the plaintiff. She was legally competent to enter into such covenants, and upon the face of the deed appears to have done so. For all the purposes thereof it was her contract; and it seems to us it would be a strained and unreasonable construction to give the deed the limited effect contended for it. When a deed on its face purports to convey a restricted or partial interest in land, the covenants, though general, will be limited to such interest. Sweet v. Brown, 12 Met. 177, 45 Am. Dec. 243. But where a deed assumes to convey the land, and the covenants are unrestricted, it is difficult to see how the court can limit or apportion its application, if it gives any effect to it at all. Here (to repeat), it will be observed, the covenant reads: 'And the said Julius Zellmer and Riecke Zellmer, his wife, parties of the first part, do covenant . . . that the said parties of the first part will warrant and defend the title to the said premises against all lawful claims.' Dower is in the nature of an encumbrance. Is the covenant of the wife operative to estop her as against a claim of dower subsequently arising, or does the deed simply release her present right, and is the covenant of both operative as to the legal title and estate of which the husband is seised, or does her covenant, if it is operative at all, relate merely to her statutory interests

as wife? In view of her capacity to bind herself by her covenants, if operative at all, we are of the opinion that the covenant referred to must be construed in its natural and broader, and not in the restricted, sense. In construing a similar statute in Massachusetts, the court say: 'The provision in the act that nothing therein shall authorize her to convey property to, or make contracts with, her husband, is evidently not intended to impose any new restriction on her capacity, but merely to affirm the common-law rule, so far as the husband is the other party to the contract or grant; but does not prevent both of them from binding themselves by a joint promise to a third person.' Major v. Holmes, 124 Mass. 108. The acts of 1875 and 1876, superseding dower and making provisions in lieu thereof, place the husband and wife substantially on the same footing as respects rights in the real property of each other. Construed in connection with the homestead law, and the act concerning married women of 1869, the case stands thus: In whichever one the title to the homestead may be, neither can convey the same without the other. The wife's signature is necessary to the deed of other lands belonging to the husband, in order to pass a clear title; and the husband must join in all conveyances of the wife's lands. In Iowa they have a statute (Code, § 1937) in respect to liability upon covenants in such deeds, which is as follows: 'In cases where either the husband or wife joins in a conveyance of real property owned by the other, the husband or wife so joining shall not be bound by the covenants of such conveyance unless it is expressly so stated on the face thereof.' We have no such saving clause in our statute. Whether there ought to be is a matter addressed to the legislature, rather than to the courts. In the absence of it, to attempt to place a limited construction upon such deeds, contrary to the fair and natural signification of the language used, is not warranted by the statute or supported by sound reason. Mortgages frequently contain other express covenants than those relating to the title; as, for example, in this instance, to pay the debt or to pay taxes. Shall a married woman be bound by such covenants, and exempt from liability for the others? If she joins in all, there can be no reason why she should not be personlly liable in all alike, since she is capable of so binding herself; and, if she is so liable, they must operate by way of estoppel. The courts are careful and conservative in the construction of statutes of this character, which are in derogation

of the common law; but they cannot make exceptions and limitations which the statute does not warrant."

We are not unmindful of the case of Snoddy v. Leavitt, 105 Ind. 357, 5 N. E. 13, and of other cases decided under statutes similar to that passed upon in that case. It is to be noticed, however, that in Indiana the statute merely removed the wife's contractual disability in relation to her own separate estate. It did not, as does that of North Dakota, remove her contractual disabilities altogether, and place her upon the same footing as if she were unmarried, and as her husband himself.

Nor, too, are we unmindful of the cases of Roberts v. Roberts, 10 N. D. 531, 88 N. W. 289, and Omlie v. O'Toole, 16 N. D. 126, 112 N. W. 677, in which this court held that the covenant to pay the debt contained in the body of the mortgage which was executed on the husband's land, and which covenants were signed by the wife as well as the husband, did not make the wife a surety to the debt, so that payments made by the husband without the wife's knowledge would fail to prevent the running of the statute of limitations and defeat a foreclosure of the mortgage after the original period had run. We are also aware that in the former case the court stated that the mortgage "was a waiver of the wife's homestead rights simply." In that case, however, the court did not pass upon any covenants of title or quiet possession, and was considering the question of the statute of limitations merely. So, too, it was not a case where the plaintiff was coming into a court of equity seeking relief, but one in which she had been brought into a court of equity by the mortgagee.

The judgment of the District Court is reversed, and the cause is remanded with directions to enter judgment quieting the title to the land in controversy in the defendant, Edward L. Yager.

## On Petition for Rehearing.

BRUCE, J. The only doubt we have entertained after reading the petition for rehearing in this case is whether the fact that the mortgage was foreclosed for more than was in fact due gives to the plaintiff any rights in the premises. We are satisfied, however, that the mistake, and the evidence shows it to have been a bona fide mistake, gives no

such rights. The law seems to be well established that "claiming in the notice more than is due on the mortgage will not affect the validity of the sale, unless it appears that it was done with a fraudulent purpose, or that it has resulted in actual injury to the mortgagor." Bowers v. Hechtman, 45 Minn. 238, 47 N. W. 792; Huyck v. Graham, 82 Mich. 353, 46 N. W. 781; Ramsey v. Merriam, 6 Minn. 168, Gil. 104; Menard v. Crowe, 20 Minn. 448, Gil. 402; Kerfoot v. Billings, 160 Ill. 563, 43 N. E. 804; Hamilton v. Lubukee, 51 Ill. 415, 99 Am. Dec. 552; Cook v. Foster, 96 Mich. 610, 55 N. W. 1019; Jones, Mortg. § 1855; Millard v. Truax, 47 Mich. 251, 10 N. W. 358; 27 Cyc. 1469; Grove v. Great Northern Loan Co. 17 N. D. 352, 138 Am. St. Rep. 707, 116 N. W. 345.

There is no such proof in the case at bar, nor do we find any record at any time of any attempt or offer of the plaintiff to redeem from the mortgage. The mistake, indeed, was first brought to the attention of the court by the attorneys for the defendant, and there is no claim that the excess amount, which was only $127.82, in any way interfered with the bidding at the sale, or kept bidders therefrom, or in any way prejudiced the interests of the plaintiff.

The petition for a rehearing is denied. ·