SKELLY OIL COMPANY, a corporation,
Plaintiff and Respondent,

v.

A. M. FRUH COMPANY, Inc., et al.,
Defendants,

and

Carrie Ceynar Oltesvig, also known
as Carrie Ceynar, Defendant
and Appellant.

No. 8115.

Supreme Court of North Dakota.

Oct. 21, 1965.

Bjella, Jestrab, Neff & Pippin, Williston,
for defendant and appellant.

Jansonius, Fleck, Smith, Mather &
Strutz, Bismarck, for Skelly Oil Co., plain-
tiff and respondent.

Ilvedson, Pringle, Herigstad & Meschke,
Minot, for Merchants Nat. Bank and Trust
Co. of Fargo, as Executor and Trustee of
the Estate of A. M. Christensen, deceased,
of William T. Lee, deceased, and of H. A.
Nelson, deceased.

Robert A. Birdzell, Sp. Asst. Atty. Gen.,
Bismarck, for the Manager of the Bank of
North Dakota as Trustee, Agent, Substitute
and Successor of the State Treasurer as
Trustee for the State of North Dakota.

James L. Taylor, Watford City, for the
Estate of William H. Wallraff, deceased,
Ruth H. Wallraff, Executrix, and for the

Estate of J. C. Zeller, deceased, and for Frank J. Traynor.

McGee, Van Sickle & Hankla, Minot, for Reservation Royalty Co.

John D. Dalton, Bismarck, for O. Gunvaldsen, W. F. Burnett, also known as W. F. Barnett, J. H. Cooke, Robert D. Hegge and Jeanne Hegge Lincoln, as the sole heirs at law of Albeck Hegge and Bertha M. Hegge, deceased, Nina F. Hegge, Harry Paniman, Joseph Paper, E. J. Schonberg, Oscar M. Hilmo, Ida O. Uthus, Paul J. Huber, R. O. Lageson, Knute Lageson, Annie Loyland, Annie Nelson, Corrine Boushea, Olger K. Lageson and Glenna Miller, the heirs at law of Ole Lageson, also known as Ole K. Lageson, deceased; E. W. Engstrom, Frank W. Peterson, and Rodney C. Hastings.

Arley R. Bjella, Williston, for Peter O. Nygaard and Kathleen Nygaard.

Joseph P. Stevens, Minot, for Roy Keating.

BURKE, Chief Justice.

Skelly Oil Company, operator under oil and gas leases of the Southeast Quarter (SE¼) of Section Twenty-seven (27), Township One Hundred Fifty-two (152) North, Range Ninety-six (96) West, McKenzie County, North Dakota, brought this action to resolve conflicting claims to the royalty it was required to pay under its leases. The suit is one for a declaratory judgment.

Judgment was entered in the case decreeing that Carrie Ceynar Oltesvig was the owner of an undivided one-half interest in and to the oil and gas and other minerals under the above described land and that such interest was subject to certain royalty grants made by Carrie Ceynar Oltesvig and her former husband, William Ceynar in 1937. It was also decreed that the State of North Dakota was the owner of an undivided half interest in and to the oil and gas and other minerals under said land. Carrie Ceynar Oltesvig has appealed from the judgment and demanded a trial anew in this court.

There are many parties involved but the issues are relatively simple. They are: Is the doctrine of estoppel by grant operative against the defendant, Carrie Ceynar Oltesvig in the circumstances of this case? and: Is the title of the defendants who claim under a grant of royalty from Carrie Ceynar Oltesvig and her first husband, William Ceynar, barred by limitation? (Sec. 47-06-03 NDCC)

On January 24, 1931, Carrie Ceynar was the owner of the record title to the above described tract of land. On that date she and her husband, William Ceynar, mortgaged the land to the State of North Dakota to secure a loan of $600.00. In 1937, she and her husband by five royalty assignments conveyed royalties aggregating ten percent of the oil and gas produced and saved from the described land and two other quarter-sections. Each of the royalty assignments contained the following warranty:

"* * * (A) I do hereby assign said royalty under the lease now covering said lands as well as any lease, or leases, that may be hereafter made covering said premises, and agree to warrant and defend the title to the same, and that I have lawful authority to sell and assign said royalty."

Foreclosure proceedings under the above mentioned mortgage were commenced in 1939. On Ooctober 31, 1939, a sheriff's certificate of sale was issued to the State Treasurer, as trustee. On November 16, 1939, each of the assignees of royalty was given notice of the foreclosure proceedings. No redemption from the foreclosure sale was made and on November 1, 1940, a sheriff's deed was issued to the State Treasurer, as trustee for the State.

In January 1945, William Ceynar purchased the described land from the State Treasurer, as trustee, by contract for deed. This contract contained a provision against assignment without the written consent of

the vendor. William Ceynar died testate on November 10, 1948. By his will he devised all of his property to Carrie Ceynar. On July 30, 1951, a decree of distribution, decreeing that the tract with which we are here concerned was the property of Carrie Ceynar, was entered. At this time the obligation under the contract for deed had not been fulfilled. On February 7, 1952, Carrie Ceynar Oltesvig (the same person as Carrie Ceynar) received a warranty deed to the property from the State Treasurer, as trustee. Prior to this grant no consent to any assignment of the contract for the sale of this property had ever been executed by the vendor.

■ At the outset of our consideration of the legal issues raised on this appeal we point out that it is unnecessary for us to consider the sufficiency of the proceedings to foreclose the mortgage executed by William and Carrie Ceynar to the State Treasurer. The judgment entered in this case decreed that such proceedings were sufficient to vest the whole title to the land in the State Treasurer as trustee and no challenge to the correctness of that decision has been made on this appeal. It follows that the reservation by the State Treasurer, as trustee, of 50% of the minerals underlying the land is valid and that such mineral interest is not encumbered by grants of royalty made subsequent to the execution and recording of the foreclosed mortgage. It also follows that the title derived by William and Carrie Ceynar from the State Treasurer, as trustee, is also free of the previously granted royalty interests unless they are estopped to deny such interests by their prior executed grants and warranties.

The basic issue in this case has been decided by this Court in Aure v. Mackoff (N.D.) 93 N.W.2d 807. In that case we held:

"Where a mortgagor after the execution of a real estate mortgage conveys the mortgaged property without mentioning the mortgage by a conveyance containing a warranty of title and after foreclosure of the mortgage reacquires

title from the purchaser at the foreclosure sale the title so reacquired inures to the benefit of the grantee."

Under a literal application of this rule, William Ceynar's acquisition of title to the described land from the mortgagee inured to the benefit of the grantees of the royalty interests. Carrie Ceynar Oltesvig, however, urges that the circumstances of the several transactions create an exception in favor of William Ceynar. It is undisputed that at the time of the execution of the mortgage and the royalty grants, the sole record title to the land was in Carrie Ceynar and that this tract was not the homestead of the parties. It is claimed that William Ceynar was not a necessary party to the royalty grants and that his joinder therein was a precautionary measure to eliminate any possible future claim of an interest not of record; that where a spouse signs a conveyance for that purpose he is not bound by any of the covenants contained therein; and that therefore an after-acquired title by him does not inure to the benefit of the grantees in the prior conveyance.

We find that in some jurisdictions married women who sign conveyances with their husbands merely for the purpose of releasing dower or other inchoate rights are not bound by the warranties contained in the conveyances. 26 Am.Jur. (Husband and Wife, Sec. 180) 801; 41 C.J.S. Husband and Wife § 39, p. 494; Anno.: 107 A.L.R. 318. This rule had its origin in the common law disability of a married woman to contract and in the reluctance of courts to construe statutes, which removed this common law disability, to grant to married women the power to execute warranties of title except with respect to their separate property. Sanford v. Kane, 133 Ill. 199, 24 N.E. 414, 8 L.R.A. 724, 23 Am.St.Rep. 602.

■ This rule, however, has never been adopted in this State. In Martin v. Yager, 30 N.D. 577, p. 581, 153 N.W. 286, p. 287, we said:

"There can be no doubt that, under the common-law rule and in the absence

of a married woman's act such as we have in North Dakota, the covenants of the wife would be merely deemed a waiver of the homestead interest, and that the wife would not be estopped from asserting her after-acquired title.

"This rule, however, is based upon the old common-law theory of the contractual incapacity of a married woman * * *.

"It can have no application in a state like North Dakota, where that incapacity has been entirely removed by the statute, and a married woman has the same contractual ability as a feme sole, or as her husband himself."

It appears, therefore, that the doctrine which Carrie Ceynar Oltesvig would have us apply in this case has been applied in some states, but not in North Dakota, with respect to married women. We know of no jurisdiction which relieves a husband of the obligation of a warranty contained in a deed of his wife's separate property where he has joined in the deed and warranty. No legal basis exists for relieving him of that obligation, and he is subject to the rule as stated in Aure v. Mackoff, supra.

It is our opinion that when William Ceynar acquired title to the described land from the mortgagee in 1945, that his title inured to the benefit of the grantees of royalty and that he was estopped to deny the title of such grantees. It follows, that when Carrie Ceynar Oltesvig acquired the land as the successor in interest to her husband, the land was subject to the interests of the royalty owners. Aure v. Mackoff, supra.

This holding disposes of the case and it is therefore unnecessary for us to consider any of the other issues raised by appellant. The judgment of the District Court is affirmed.

STRUTZ, ERICKSTAD and TEIGEN, JJ., concur.

KNUDSON, J., not being a member of the Court at the time of submission of this case, did not participate.