NicholsoN, C. J.,
delivered the opinion of the Court.
This is a bill for the specific performance of a con-' tract of sale of land, entered into on the 19th of October, 1861, between B. L. Partee and M. C. Partee his wife, on 'the one side, and D. V. Alexander on the other. Complainant alleges that B. L. Partee and wife sold the land in controversy to D. V. Alexander, and, executed to him a bond for title; that D. V. Alexander sold the land to J. Almus Gardner and executed to him a bond for title; and that complainant purchased the land from Gardner and took his deed therefor. He alleges that Alexander had complied with his contract with B. L. Partee and M. C. Partee; that Gardner had paid Alexander for the land, and that he had paid Gardner for it; and, therefore, that he is entitled to have the title divested out of B. L. Partee and M. C. Partee, and vested in himself. He makes B. L. Partee, M. C. Partee and D. Y. Alexander defendants, and prays for a divestiture and vestiture of title.
There is no answer by Alexander, nor is there any order pro confesso as to him.
B. L. Partee and M. C. Partee file a joint answer; they admit the sale of the land to Alexander and the execution of the title bond; they say they retained the *28 legal title until tbe purchase money or its equivalent was made good to them; that the land which Alexander was to convey, in consideration of the land they sold him, is encumbered with liens for a portion of the purchase money, which Alexander has never paid, and which is sufficient in amount, as they believe, to endanger their title. They therefore resist a specific performance.
The title bond from Partee and wife to Alexander is exhibited, and is as follows:
“I, B. L. Partee and M. C. Partee, bind myself to pay D. V. Alexander the sum of $10,000. The con•dition of this obligation is such, that whereas the said D. V. Alexander has this day purchased of me a tract of land for $5,000, on the following payments: $5,000 paid in a tract of land sold to Mrs. Wade; a tract of land in Gibson county, District No. 14, State of Tennessee, containing by estimation two hundred acres, bounded, etc.
“Now, if I should make or cause to be made to the said D. V. Alexander, his heirs or assigns, a good and sufficient title in fee simple warranty to said tract of land, which when I make a deed this obligation to be void; this October 19th, 1861.
“B. L. Partee,
“ M. C. Partee.”
This bond was regularly acknowledged, and the privy examination of M. C. Partee taken, and the bond admitted to registration.
The case was heard upon bill and answer and exhibits, no proof having been taken. The decree of *29 tbe Chancellor recites, that it appeared that B. L. Par-tee and M. C. Partee bound themselves to make title to D. ~V. Alexander, and that Alexander sold said land to Gardner and executed a bond for title, and that said Gardner paid the purchase money to Alexander; and that Gardner conveyed the land to Moseby, and that Moseby paid him for it; and that Alexander has paid the purchase money to Partee and wife, and that they have no claim on the land. It was therefore decreed that the title be divested out of B. L. Partee and his wife, and be vested in Moseby.
The case comes into this Court upon writ of error.
The first error assigned is, that the decree is not sustained by the facts in the case. Complainant stands in the shoes of Alexander, who had only an equitable title. He had no right to have his equitable title ripened into a legal title, until he had complied with the contract- of purchase. Complainant alleges that Alexander had performed his side of the contract, and that he had thereby entitled himself to the legal estate. This allegation is denied by the answer, and the title bond is the only evidence in the case. The recital in the title bond is: “D. V. Alexander has this day purchased of - me a tract of land for $5,000 — paid in a tract of land sold to Mrs. 'Wade.” It may be inferred from this recital, that Alexander had sold to Mrs. Wade a tract of land valued at $5,000, which was exchanged with B. L. Partee and wife for the tract in controversy. The bill alleges that Alexander has made to Mrs. Wade a bond to the land mentioned in the title bond, and has in all things *30 complied with bis part of tlie contract. If Alexander was bound to make a clear title to the land sold to Mrs. "Wade, before Partee and wife were to make a title to him, as would seem to be the meaning of the contract, then the decree was erroneous, in divesting the title out of Partee and wife, until Moseby had shown that Alexander had made such title.
But there is nothing in the record showing that Alexander ever conveyed his equitable title to the land in controversy to Gardner. There is a conveyance of the land by Gardner to Moseby, but this would give Moseby no title, unless it was also shown that Alexander had assigned his equitable title to Gardner. These several assignments, and the payment of the several considerations are assumed in the decree to be established, and they are made the grounds of the decree; whereas the record furnishes no evidence to sustain the assumption. The first error assigned is therefore well taken and is sustained.
The next error assigned is, that as M. C. Partee was a married woman when she executed the title bond, her act was a nullity; and that the decree divesting the title of the land out of her, was erroneous. This presents the question, whether, under the laws of Tennessee, a married woman can enter' into a binding contract to convey her lands at a future time, and upon the performance of- specific conditions by the other contracting party.
It is well settled, that by the common law, the conveyance of a married woman, except by matter of record, was absolutely void. The only modes in which *31 she could convey her real estate, were by fine and common recovery.
The right of disposal existed, but- its exercise was restricted to the inodes stated. These modes of passing the real estate of a married woman were never in use or force, either in North Carolina or Tennessee. But, at an early period in North Carolina, and before any statute was passed on the subject, sales of land were made by husband and wife by written conveyances, acknowledged with the private examination of the wife in analogy to the mode of passing title by fine in England. In 1715, an act was passed in North Carolina, ratifying sales of land so made, and providing the mode in which sales of land by married women should thereafter be made. The preamble to this act recites that “sales have been made by the husband, with the wife’s consent, acknowledged in Court, the wife being first privately examined by the Court,” and the enactment is, that “all such sales,” made before or after the enactment, should be effectual to pass the title of married women.
This act was the foundation of our system of conveyances of their lands by married women. It did not communicate to married women the right to dispose of their lands, but it prescribed and regulated the only mode in which it could be done.
It will be observed that the act does not use the word “deed,” or the word “conveyance,” but, both in the preamble and in the body of the act, the language used is, “sales of land.” It has been argued before us that the words, “sales of land,” include sales *32 either by deed or by title bond, and hence that a sale by title bond is as effectual, under this act, to pass the title as by deed, provided the married woman was privately examined. There is a wide difference between a deed for land and a title bond for land, which is overlooked in this argument. The one is the evidence of an executed or consummated contract, the other is the evidence of an executory contract; the former is evidence that a sale has been made, the latter that a sale is to be made — the one is a safe, and the other a contract for a sale. . The word “sale,” as used in the act, means ex vi termini, a passing of the title by deed.
In this construction of the language of the act we are fully sustained by legislative and judicial interpretations. The act of 1715 was amended by the act of 1751, and provides for the appointment of commissioners, in certain cases, to take the private examination of married women. In this act, the language used is: “All conveyances in writing, and sealed, by husband and wife for any lands,” shall be valid to pass the title of the married woman. And in providing for taking the private examination of a married woman, the word “deed” is used as synonymous with “conveyance in writing and sealed.”
The act of 1715 was again amended by the act of 1813, in which the language used is: “It shall and may be lawful to take the probate and acknowledgment of deeds made by husband and wife,” etc.
The act of 1813 remained in force until 1833, when the law was again amended, and in that act *33 the language is: “All deeds of conveyance heretofore made, or hereafter to be executed, by husband and wife,” etc.
It is thus made clear that the legislative construction of the term “sales of land,” used in the act of 1715, has uniformly been that it meant conveyances in writing under seal or deeds; and in none of the acts passed prior to the Code was provision made for the sale of their lands by married women in any other mode than by deeds.
The judicial construction of the act of 1715 has been uniformly the same as the legislative. In Montgomery v. Hobson, Meigs R., 462, Judge Turley, in quoting the first section of the act, substitutes the words “all deeds made by husband and wife” for the words “all sales made by husband and wife,” and, in commenting on the statute, says: “This statute substitutes .a deed of bargain and sale in the place of a fine and recovery.” In Cope v. Meeks, 3 Head, 388, Judge McKinney said: “The act of 1715, c. 28, substituted a deed jointly executed by husband and wife, and acknowledged in the form prescribed, instead 'of the common law modes of conveyance, and in no other way can the wife’s estate pass under our law.”
In Gillespie v. Worford, 2 Cold., 636, Judge Mil-ligan said: “The mode of conveyance by deed, jointly executed by husband and wife, accompanied by the private examination of the wife, substituted, under the act of 1715, instead of fine and recovery at common law, remains unchanged by all the subsequent legislation on the subject in the State.” He adds, in nearly *34 the language of Judge McKinney in the case of Cope v. Meeks, that “the only mode recognized by our law is by solemn deed, jointly executed by husband and wife, with the privy' examination of the wife.”
The conclusion is irresistible, that, prior to the Code, the only mode ’ by which a married woman could dispose of her land was by deed, executed jointly by her husband and herself, with her private examination. No other form of disposing of her land was recognized by the statutes other than by deed; and such is now the law, unless it has been changed by the Code.
By sec. 2076 of the Code, it is provided that “every deed-or other instrument of writing executed by husband and wife, and acknowledged or proved and registered in the manner hereinafter prescribed, shall bind them, their heirs or assigns.” It is argued that a title bond executed by husband and wife is “an instrument of writing,” which, when acknowledged and registered as prescribed, becomes binding on them. It was not intended by the Legislature that every instrument of every kind should become binding by acknowledgment .and registration. This section of the Code does not undertake to provide what instruments shall be binding, but what instruments executed by husband and wife shall be acknowledged and registered in order to make them binding. Deeds arc specified as among the instruments, because deeds have been recognized as the mode of conveyance by husband and wife ever since the act’ of 1715. But the law recognizes the right of husband and wife to execute other- instruments in writing besides deeds. The meaning of the section, *35 then, is, that every instrument in writing, which husband and wife can execute in pursuance of existing laws, shall be binding on - them when acknowledged and registered as prescribed in- that section. The question recurs, could a married woman, by the existing laws, join with her husband in executing a penal bond to be binding on her on her failure to execute a deed in fee simple with covenants of warranty ? If she could, then such bond is included in the term, “other instruments in writing.” If not, then a title bond is not one of the instruments meant.
But we have already shown, by a review of our legislation ■ on this subject and of a number of our adjudications, that the conveyance by deed is the only mode recognized by our law by which husband and wife can dispose of the wife’s land. We may add to the authorities already referred to, the case of Pitcher v. Smith, 2 Head, 208. In that case, a married woman had bargained and covenanted by penal bond to convey a lot of ground to the purchaser upon the payment of the purchase money. The purchase money was paid, but the married woman refused to make the conveyance. The purchaser filed a bill to have the contract specifically executed, and to have the title divested and vested. The married woman admitted in her answer that the purchase money was paid, but, because it was paid to her husband, she refused to make the conveyance. The Court held that, being a married woman, her covenant to convey was simply void.
It is said by Judge Story that, “by the general principles of law. a married woman is, during her coverture, *36 disabled from entering into any contract respecting ber real property, either to bind herself or to bind her heirs; and this disability can be overcome only by adopting the precise means allowed by law to dispose of her real estate, as in England, by fine, and in America, by solemn conveyance.” 2 Story Eq., s. 1391.
It was upon the same principle that this Court, in the case of Gillespie v. Worford, 2 Col., 632, held that a married woman, under our statutes, can not execute a power of attorney, by which her agent can lawfully sell and convey her real estate. No such power has been conferred on a married woman by any statute, nor has any such power been conferred upon her under which she can bind herself by contract to convey her land. She has the power to convey it, but only in a specific mode, and no conveyance by her can be valid that does not strictly pursue the mode pointed out by statute for the execution of the power. Even if she pursue the mode prescribed, and convey her land with covenants of warranty, she is not liable on her covenants (2 Head, 384), nor could she be held liable on her penal bond, conditioned to convey with covenants of warranty, for the obvious reason that she is a married woman, and incapable of binding herself by such a contract.
It results that the second cause of error assigned by defendants, Partee and wife, was well taken, and that the decree was erroneous, in divesting the title of the land in controversy out of Partee and wife, and vesting the same in complainant Moseby, and the same is reversed, and his bill dismissed with costs.
*37 It further appears, tbat during tbe pendency of tbis cause, G. M. Hopper and M. Wilkinson & Co. filed attachment bills, as creditors of H. Y. Alexander, alleging that the assignments of the land in controversy by Alexander to Gardner, and by Gardner to Moseby, were fraudulent, and seeking to subject the equitable interest of Alexander in said land to the satisfaction of their claims. It appears further, that those attachment bills were consolidated and heard together, and that a decree was rendered, declaring the several transfers from Alexander to Gardner, and from Gardner to Moseby, to be fraudulent; and ordering the land to be sold to satisfy the claims of the attaching creditors.
It appears, also, that B. L. Partee and wife, who were defendants to the bills of the attaching creditors, filed their bill of review, alleging that there was error apparent on the face of the decree in said consolidated causes, in ordering a sale of the land for the satisfaction of the claims of the attaching creditors of Alexander, in violation of the rights of Partee and wife in the land. And it appears, moreover, that upon demurrer to the bill of review, the same was sustained and the bill dismissed; from which decree Partee and wife have appealed to this Court.
The question now presented is, whether the Chancellor erred in sustaining the demurrer to the bill of review? It appears from the answer of Partee and wife to the attachment bills, that they claimed a lien on the land in controversy, for unpaid purchase money, or on account of incumbrances on the tract of land sold to them by Alexander, in exchange for the land *38 in controversy, to secure which they had retained the legal title. It appears, also, from the attachment bills, that complainants therein allege that the legal title to the land in controversy was in Partee and wife. But the decree proceeds to order a sale of the land as the property of Alexander, without noticing the fact stated in the bills, and set up in the ánswers, that the legal title was in Partee and wife; and without noticing the claim of Partee and wife for unpaid purchase money, or for the removal of incumbrances. In these respects the decree was erroneous, and the demurrer therefore should have been overruled. The decree sustaining the demurrer and dismissing the bill will be reversed, and the cause remanded to the Chancery Court for answer to the allegations of the bill of review. As Partee and wife, in their bill of' review, have expressed their willingness that the land should be sold, subject to their claim for unpaid purchase money, and for the amount of incumbrances on the land sold to them by Alexander, after the amounts so claimed shall be ascertained, the land will be subject to sale, to satisfy, first, the amount of said unpaid purchase money or incum-brances, and then to the claims of the attaching creditors.
The costs of the bill of review in this Court will be paid by the defendants, and of the court below, as the, Chancellor may direct.