H. M. WATTS AND WIFE v. JOHN E. RAMSEY, et al.*

(*Nashville.* December Term, 1927.)

Opinion dated February 18, 1928.

1. MARRIED WOMEN. CONTRACT. COMMON LAW. MAR-
RIED WOMEN'S EMANCIPATION ACT.

The common-law rule that a married woman is only sui juris inso-
far as she is authorized by statute to convey her lands, or to join
with her husband in the conveyance of his lands for the purpose
of relinquishing any claims to dower or homestead that she might
have therein, and in all other respects where she is limited to
contract under the common law, has been abrogated by the Mar-
ried Women's Emancipation Act. (Post, p. 468.)

Citing: 13 R. C. L., 1325, 1326; Moseby v. Partee, 52 Tenn. (5 Heis.),
26; Fletcher v. Coleman, 39 Tenn. (2 Head), 384; Acts of 1913, ch.
26; Acts of 1919, ch. 126.

2. DEEDS. COVENANTS. MARRIED WOMEN. EVIDENCE.

Where it appears that a married woman joins with her husband
in a deed which by plain and unequivocal language undertook
to convey real estate and to covenant with the purchasers that it
was unencumbered, she is bound by the recital in the deed and
under such circumstances it would violate the plain rules of evi-
dence to permit her to avoid liability by showing by parol testi-
mony a state of facts contradictory to those recited in the deed.
(Post, p. 469.)

Citing: Sanford v. Kane, 113 Ill., 199, 24 N. E., 414, 23 A. S. R., 602,
8 L. R. A., 724.

3. DEEDS. JOINT COVENANT. MARRIED WOMEN. PRE-
SUMPTION. COMMON LAW.

Since the passage of our Married Women's Emancipation Act the
common-law rule that where an obligation is created by two or

more, the general presumption is that it is joint, and words of severance are necessary to overcome this primary presumption, though the obligors are husband and wife; but this rule does not apply to covenants joint in form made by husband and wife in conveyances of the husband's property, unless it appears that the consideration was received by her. (Post, p. 471.)

Distinguishing: 15 C. J., 1223; Agar v. Streeter, 183 Mich., 600, 150 N. W., 160; Anno. Cas. 1916 E, 518.

4. DEEDS. REFORMATION. PLEADINGS. EVIDENCE.

Where a married woman executes a general warranty deed in conjunction with her husband, in the capacity of a grantor, oral testimony would be incompetent to contradict or vary the instrument for the purpose of showing that she only intended to convey her marital rights, in the absence of some pleading seeking a reformation of the deed. (Post, p. 473.)

5. DEEDS. PURCHASE MONEY. BREACH OF WARRANTY. SET OFF.

In a suit against the grantor in a deed for a breach of the covenant of non-encumbrance where it appears that one of the purchase money notes executed by the grantee was negotiated by one of the grantors, and endorsed for accommodation by the other grantor, (the wife); that she had subsequently been sued upon said note; a judgment entered against her, and she had paid the same, she can by cross-bill obtain judgment against the makers of said note, and apply the same as a set off against a judgment had for breach of warranty. (Post, p. 473.)

---

*Headnotes 1. Husband and Wife, 30 C. J., section 365; 2. Covenants, 15 C. J., section 22; Reformation of Instruments, 34 Cyc., p. 914; 3. Evidence, 22 C. J., section 1496.

---

FROM WARREN.

---

Appeal from the Chancery Court of Warren County.— HON. T. L. STEWART, Judge.

JOHN A. MITCHELL, O. K. HOLLIDAY, JOHN L. WILLIS and FAIRBANKS & McDONOUGH, for complainant.

STERLING S. BROWN, for defendant.

MR. JUSTICE MCKINNEY delivered the opinion of the Court.

This suit involves the question of whether the wife is liable in damages for breach of covenants in a deed which she and her husband jointly executed and acknowledged to land, the title to which was in the latter, and in which she had a homestead right, the essential provisions thereof being as follows:

"For and in consideration of the sum of Seven Thousand Two Hundred and Fifty ($7250) Dollars, Two Thousand of which is cash in hand paid, the receipt of which is hereby acknowledged and one note for the sum of Two Thousand Dollars, due and payable January 1, 1921, one note for the sum of Two Thousand Dollars, due and payable on January 1, 1922, and one note for the sum of Twelve Hundred and Fifty Dollars, due and payable on January 1, 1923, and each note bearing interest from January 1, 1920, and each note of even date with this Deed, we, J. F. Ramsey and wife, Vassie Ramsey, have this day bargained and sold and do hereby transfer and convey unto H. M. Watts and wife, Gracie Watts, their heirs and assigns forever, the following described tract or parcel of land (Then follows description).

"To have and to hold the above-described tract or parcel of land with all the appurtenances, estate, title and interest thereto belonging to the said H. M. Watts and wife, Gracie Watts, their heirs and assigns forever.

"And we, do covenant with the said H. M. Watts and wife, Gracie Watts, that we are lawful seized and possessed of said land in fee simple and have a good and

156 Tenn.—30.

perfect right to convey the same and the same is unincumbered.

"And we, J. E. Ramsey and wife, Vassie Ramsey, do further covenant with the said H. M. Watts and wife, Gracie Watts, that we will forever warrant and defend the title to the above-described tract or parcel of land to the said H. M. Watts and wife, Gracie Watts, their heirs and assigns against the lawful claims of all persons whomsoever, and it is expressly agreed and understood that a lien is hereby retained upon tract of land herein conveyed to secure all deferred payments of purchase money."

Mrs. Ramsey, by way of defense, undertook to show by parol testimony that the vendees made no contract whatever with her; that they paid the consideration to the husband, and that, at the suggestion of the draftsman of the deed, she joined in the deed for the sole purpose of divesting herself of any marital rights she might have in this land; that the grantees accepted said deed with that understanding and without relying upon any of her covenants of warranty.

The Chancellor sustained this defense and held that Mrs. Ramsey was not liable for the breach of her covenant against encumbrances.

The Court of Appeals reversed the Chancellor and held that the parol evidence referred to above was inadmissible because it undertook to change or contradict the written agreement of the parties, citing *McGannon* v. *Farrell,* 141 Tenn., 631.

Independently of the Married Women's Emancipation Act, the rule as to the liability of the wife for breach of covenants in deeds to her own lands, or to those of her husband in which she joined, is thus stated in 13 R. C. L., 1325-6, as follows:

"In an early English case it was decided that when a married woman joins in the levy of a fine with a warranty, she is bound by the covenant and an action thereon may be maintained against her. A fine partakes of the solemnity, and has the same effect as a judgment, against which there can be no averment, while it remains unreversed or set aside; and it would seem that a power to warrant by a *feme covert,* who joins in a fine even of her husband's lands, is incident to that mode of alienation. At any rate it appears to have been settled that she was bound by such a covenant as much as her husband. As between a covenant thus made and a covenant in a conveyance there is, however, a great difference. At common law coverture disqualified a married woman from entering into a contract or covenant personally binding on her, and though by statute from an early date, she was empowered to convey her real estate in conjunction with her husband, this did not remove her general disability to contract, and where she executed a deed with covenants of title, her covenants were not personally binding upon her. The statute altered the common law no further than merely to enable the *feme covert* to convey her interest in the land intended to be conveyed; it was in that respect a substitute for levying a fine, but beyond that, and as regards collateral covenants, the rule of the common law prevailed and a *feme covert* was not bound by such covenants. And her covenants, according to the great weight of authority, were equally ineffectual to pass by way of estoppel her subsequently acquired interest in the lands conveyed. A *fortiori* the joinder of a wife in the conveyance of her husband's lands for the purpose of barring her dower, with covenants of warranty, does not operate to prevent her from setting up a subsequently acquired title,

though there are some decisions which take the opposite view. So it has been held that where a wife who has a prior lien on the land of her husband, joins him in a mortgage for the purpose of barring her dower, is not estopped by the covenants in the mortgage from asserting her prior lien against the mortgagee. In some cases, however, the view has been taken that a married woman's covenant of warranty in her duly executed deed purporting to convey her lands operates to pass a subsequently acquired title. Irrespective of the effect of a married woman's covenant of warranty on her after-acquired title, it cannot, by reason of her incapacity to bind herself by contract, be the foundation of an action of covenant against her."

The decisions of this court are in accord with the foregoing text. *Moseby* v. *Partee,* 52 Tenn., 26; *Fletcher* v. *Coleman,* 39 Tenn., 384.

(1) The basis of the rule is that the wife is only *sui juris* in so far as she is authorized by statute to convey her lands, or to join with her husband in the conveyance of his lands for the purpose of relinquishing any claims to dower or homestead that she might have therein, and in all other respects she is incapacitated to contract under the common-law disability of coverture.

Section 1 of chapter 26 of the Acts of 1913 is in this language:

"Be it enacted by the General Assembly of the State of Tennessee, That married women be, and are, hereby fully emancipated from all disability on account of coverture, and the common law as to the disabilities of married women and its effect on the rights of property of the wife, is totally abrogated, and marriage shall not impose any disability or incapacity on a woman as to the ownership, acquisition, or disposition of property

of any sort, or as to her capacity to make contracts and
do all acts in reference to property which she could law-
fully do if she were not married; but every woman now
married, or hereafter to be married, shall have the same
capacity to acquire, hold, manage, control, use, enjoy,
and dispose of, all property, real and personal, in pos-
session, and to make any contract in reference to it, and
to bind herself personally, and to sue and be sued with
all the rights and incidents thereof, as if she were not
married.''

This act was repealed and reenacted by chapter 126 of
the Acts of 1919.

(2) In this situation, married women having been
given· the *status* of *femes sole* with· full power and au-
thority to contract and be contracted with, we see no
reason why Mrs. Ramsey is not bound by the recitals in
her deed. By plain and unequivocal language she under-
took to convey this property and to covenant with the
purchasers that it was unencumbered. It would violate
the plain rules of evidence to permit one, in such cir-
cumstances, to avoid liability by showing by parol tes-
timony a state of facts contradictory to those recited in
the deed.

While there are a number of cases that tend to indi-
cate that where it appears from the instrument itself
that the wife joined for the sole purpose of relinquish-
ing her dower or homestead right, or for the purpose of
conveying some other interest less than the whole, gen-
eral covenants in the deed will be construed as applying
only to the interests so conveyed. But we have been
cited to no authority and have been unable to find any
holding that a married woman who has been emancipated
from all disabilities of coverture and given the *status*
of a *feme sole* is not liable for a breach of covenants

where she expressly purports by the deed to convey an absolute title and to covenant against encumbrances. In such circumstances, if the deed does not express the real agreement of the parties, the remedy would be a bill in equity for reformation of the deed.

Counsel rely upon the following statement in 13 R. C. L., 1327, to-wit:

"On the other hand, though by statute a married woman is given general power to contract as a *feme sole,* it has still been held that where she joins with her husband in a warranty deed conveying his lands and for the sole purpose of barring her dower, the covenants do not operate to pass a title subsequently acquired by her."

The only case cited in support of the text is that of *Sanford* v. *Kane,* 133 Ill., 199, 24 N. E., 414, 23 A. S. R., 602, 8 L. R. A., 724. In that case Morris Kane and wife, Cassa Kane, executed a warranty deed to Parr, title to which was in neither of them. In the opinion the court said: "It should be said that the deed to Parr did not purport to be that of the wife, Cassa Kane." In those circumstances, it was held that she was not estopped to set up an after acquired title.

In discussing the legal principles involved the court said:

"Under our Statute, married women may make contracts that will be enforced against them, but their conveyances, in order to bind them in respect of their real estate, must have for their object the disposition, in some form, of their lands, or of some right or interest relating to their lands. Where a married woman joins with her husband in his deed, for the sole purpose of enabling him to pass the title, free from her inchoate right of dower, such deed cannot be said to be her contract for any other purpose than to release her dower. A court of equity,

when its power is invoked, will look beyond the mere form, and into the substance, of the transaction, and give effect to the contracts of parties, according to the true intent and meaning which the parties themselves understood attached to them at the time they were made. It cannot be said, at least in equity, that, by signing and acknowledging the deed of her husband for the sole purpose of releasing her dower, she makes the deed her own, and subjects herself to liability on the covenants of title. The deed may operate as a conveyance, release or acquittance only, *or it may create a contract obligation, as where the party covenants in respect of the estate granted.*"

The foregoing statement, in connection with the finding that the deed to Parr did not purport to be that of the wife, Cassa Kane, tends to support our conclusion in the instant cause. It seems, at least, to indicate that the grantor wife, being *sui juris,* is liable where she covenants with respect to the estate granted, as was done herein. The case just referred to, however, is not a direct authority because it deals primarily with the question of estoppel with respect to after acquired title.

*(3)* Under the title of "Covenants" in 15 C. J., 1223, it is said:

"Hence, where an obligation is created by two or more, the general presumption is that it is joint, and words of severance are necessary to overcome this primary presumption; but this rule does not apply to covenants joint in form made by husband and wife in conveyances of the husband's property, unless it appears that the sole consideration for the deed was received by her and was by her husband so intended."

In support of the text *Agar* v. *Streeter,* 183 Mich., 600 150 N. W., 160, Ann. Cas., 1916E, 518, is cited. In that

case it was held that an option to purchase land owned by husband and wife jointly apparently made by the husband alone, but signed by the wife, is valid and binds the wife's interest. It is conceded in the opinion that the weight of authority is the other way, and it was held by this court in *Gates* v. *Card,* 93 Tenn., 334, that in such circumstances the deed would not be sufficient to convey an interest in the land which the wife might have had.

In *Agar* v. *Streeter, supra,* after reviewing a number of decisions of that court, the opinion contained this recitation:

"From these cases I deduce the following rules:

"(1)   Usually, when a wife joins in the deed of her husband of his property, the covenants in the deed being in form the joint covenants of both of them, the covenants are not here but are his only.

"(2)   If, however, it is made to appear that the sole consideration for the deed was received by her and was by her husband so intended, the covenants will be treated as the joint covenants of husband and wife. The fact may be shown by evidence *aliunde* the deed."

With respect to the first rule, it is apparent that, when the cases referred to therein are considered, the court had in mind and was referring to the common-law rule of nonliability of the wife for breach of her covenants; and to cases where the wife joins with her husband in conveying his land by signing and acknowledging the deed without being described in the instrument as a grantor.

With respect to the second rule, the holding was based upon the theory that where the wife received the consideration it became a part of her separate estate, and

she was dealing with it as such as she was authorized to do under the statute.

*(4)* We, therefore, agree with the Court of Appeals in its holding that where a married woman executes a general warranty deed, in conjunction with her husband, in the capacity of a grantor, oral testimony would be incompetent to contradict or vary the instrument for the purpose of showing that she only intended to convey her marital rights, in the absence of some pleading seeking a reformation of the deed.

*(5)* One of the purchase money notes executed by Watts and wife to J. E. Ramsey was negotiated by the latter, and Mrs. Ramsey became an accommodation indorser thereon, and she was subsequently sued upon said note and a judgment entered against her for the full amount thereof, which she paid. By her cross-bill Mrs. Ramsey seeks judgment against the makers of said note, Mr. and Mrs. Watts, for the sum so paid, which relief was granted her by the Court of Appeals. The assignments of error predicated upon this action of the Court of Appeals are without merit.

Finding no error in the decree of the Court of Appeals it results that the petitions for writs of *certiorari* will be denied.